1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3       WESTERN DIVISION

4   THE HONORABLE GEORGE H. KING, UNITED STATES DISTRICT JUDGE

5

6   UNITED STATES OF AMERICA,        )
                                     )
7                   PLAINTIFF,       )
                                     )
8           VS.                      )      NO. CR 10-531-GHK
                                     )
9   JACK GAMBARYAN, ARAM KHACHATRYAN, )
    GRIGOR GARIBYAN, HAYK KARAYAN AND )
10  ZHIRAYR KARAYAN,                 )
                                     )
11                  DEFENDANTS.      )
    _____)
12

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16       LOS ANGELES, CALIFORNIA

17   WEDNESDAY, DECEMBER 15, 2010; 9:37 A.M.

18   HEARING RE MOTION AND EVIDENTIARY HEARING

19       PAGES 1 THROUGH 96, INCLUSIVE

20

21

22

23                              MARY RIORDAN RICKEY
                                OFFICIAL COURT REPORTER
24                              255 EAST TEMPLE STREET
                                ROOM 181-G
25                              LOS ANGELES, CA  90012
                                MARY.USDC@YAHOO.COM

DECEMBER 15, 2010

```
 1    APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3        UNITED STATES DEPARTMENT OF JUSTICE
          UNITED ATTORNEY'S STATES OFFICE
 4        ANDRÉ BIROTTE JR.
          BY:  STEPHEN WOLFE
 5            ASSISTANT UNITED STATES ATTORNEY
          312 NORTH SPRING STREET
 6        LOS ANGELES, CALIFORNIA  90012
          213-894-2434

 7

 8   FOR DEFENDANT JACK GAMBARYAN:

 9        LAW OFFICES OF DAVID R. REED
          BY:  DAVID ROBERT REED
10            ATTORNEY AT LAW
          3699 WILSHIRE BOULEVARD
11        SUITE 850
          LOS ANGELES, CALIFORNIA  90010
12        310-854-5246
          AUTOMATICTRIALS@YAHOO.COM

13

14   FOR DEFENDANT ZHIRAYR KARAYAN:

15        LAW OFFICES OF JOSEPH F. WALSH
          BY:  JOSEPH F. WALSH
16            ATTORNEY AT LAW
          205 SOUTH BROADWAY
17        SUITE 606
          LOS ANGELES, CALIFORNIA  90012
18        213-627-1793
          ATTYJOEWALSH@AOL.COM

19

20   FOR DEFENDANT GRIGOR GARIBYAN:

21        WEGMAN, LEVIN AND STANLEY
          BY:  JOHN H. STANLEY
22            ATTORNEY AT LAW
          5200 LANKERSHIM BOULEVARD
23        SUITE 850
          NORTH HOLLYWOOD, CALIFORNIA  91505
24        818-980-4000
          JS@WLSLAW.NET

25
```

DECEMBER 15, 2010

```
1   APPEARANCES OF COUNSEL:

2   FOR DEFENDANT ARAM KHACHATRYAN:

3        FEDERAL PUBLIC DEFENDER'S OFFICE
         SEAN KENNEDY
4        BY:  KIM SAVO
               DEPUTY FEDERAL PUBLIC DEFENDER
5        321 EAST 2ND STREET
         LOS ANGELES, CALIFORNIA  90012-4206
6        213-894-2854
         KIM_SAVO@FD.ORG
7

8   FOR DEFENDANT HAYK KARAYAN:

9        MARKS AND BROOKLIER
         BY:  ANTHONY P. BROOKLIER
10              ATTORNEY AT LAW
         10100 SANTA MONICA BOULEVARD
11       SUITE 300
         LOS ANGELES, CALIFORNIA  90067
12       310-772-2287
         MARKSBROOKLIER@YAHOO.COM
13

14  ALSO PRESENT:

15       MELANIE BAGHDAIAN, ATTORNEY AT LAW

16

17

18

19

20

21

22

23

24

25
```

DECEMBER 15, 2010

1
## INDEX

2
PROCEEDINGS

3    HEARING RE DEFENSE MOTION . . . . . . . . . . . . .   PAGE 6

4    EVIDENTIARY HEARING . . . . . . . . . . . . . . .   PAGE 68

5    DEFENSE ARGUMENT . . . . . . . . . . . . . . . . .   PAGE 88

6    PLAINTIFF'S ARGUMENT . . . . . . . . . . . . . . .   PAGE 92

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECEMBER 15, 2010



<u>INDEX</u>

WITNESSES

|  | DIRECT | CROSS | REDIRECT | RECROSS | BY THE COURT |
|---|---|---|---|---|---|
| TRAVIS COYLE | 74 | 76 W | | | |

<u>LEGEND:</u>

W    MR. WALSH

DECEMBER 15, 2010

```
 1         LOS ANGELES, CALIFORNIA; WEDNESDAY, DECEMBER 15, 2010

 2                           9:37 A.M.

 3                            --oOo--

 4         THE CLERK:  PLEASE REMAIN SEATED AND COME TO

 5   ORDER.  THIS UNITED STATES DISTRICT COURT IS IN SESSION.

 6   THE HONORABLE GEORGE H. KING, JUDGE PRESIDING.

 7         CALLING ITEM NO. 1 ON THE CALENDAR, CRIMINAL

 8   10-531, UNITED STATES VERSUS JACK GAMBARYAN,

 9   ARAM KHACHATRYAN, HAYK KARAYAN, AND ZHIRAYR KARAYAN.

10         COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

11   RECORD.

12         MR. WOLFE:  GOOD MORNING, YOUR HONOR.

13   STEPHEN WOLFE FOR THE UNITED STATES.

14         MR. REED:  GOOD MORNING, YOUR HONOR.  DAVID REED

15   ON BEHALF OF JACK GAMBARYAN.  HE'S PRESENT IN COURT.

16         MR. WALSH:  GOOD MORNING, YOUR HONOR.

17   JOSEPH WALSH ON BEHALF OF ZHIRAYR KARAYAN.  HE'S PRESENT IN

18   COURT.

19         MS. SAVO:  GOOD MORNING, YOUR HONOR.  KIM SAVO,

20   DEPUTY FEDERAL PUBLIC DEFENDER, ON BEHALF OF

21   ARAM KHACHATRYAN.  HE IS PRESENT ON BOND BEFORE THE COURT.

22         MR. BROOKLIER:  GOOD MORNING, YOUR HONOR.

23   ANTHONY BROOKLIER FOR HAYK KARAYAN.  HE'S PRESENT AND SEATED

24   TO THE FAR RIGHT CLOSEST TO YOUR HONOR, SEATED BEHIND ME.

25         THE COURT:  GOOD MORNING, COUNSEL.
```

```
 1              ALL RIGHT.  THIS MATTER'S ON THE COURT'S CALENDAR

 2   TO CONSIDER THE MOTION FILED BY THE DEFENDANT TO SUPPRESS

 3   EVIDENCE.  LET ME FIRST MAKE SURE THAT, PROCEDURALLY, WE ARE

 4   ON THE SAME PAGE HERE.

 5              THIS MOTION WAS BROUGHT BY MR. GAMBARYAN,

 6   MR. HAYK KARAYAN AND MR. ZHIRAYR KARAYAN AND JOINED IN BY

 7   MR. GARIBYAN AND MR. KHACHATRYAN.

 8              IS THAT CORRECT SO FAR, MR. REED?

 9              MR. REED:  I'M NOT SURE ABOUT THE LAST

10   DEFENDANT --

11              YES.  THAT'S CORRECT, YOUR HONOR.

12              THE COURT:  OKAY.  SO LET ME BEGIN BY TELLING YOU

13   WHERE I STAND AND WHAT I THINK ABOUT THIS.

14              I HAVE SPENT A LOT OF TIME THINKING ABOUT THIS,

15   AND I THINK MOST, IF NOT ALL, OF THE DISPUTED FACTS REALLY

16   ARE IMMATERIAL BECAUSE AS FAR AS I'M CONCERNED, THIS IS

17   WHERE I BELIEVE MY ANALYSIS AT THIS POINT TENTATIVELY LEADS

18   ME -- AND I'M GOING TO GIVE YOU FOLKS AN OPPORTUNITY, OF

19   COURSE, TO COMMENT, BUT THIS IS WHERE I BELIEVE MY TENTATIVE

20   IS.

21              MR. REED:  YOUR HONOR, BEFORE BEGINNING, MAY I

22   JUST STATE THAT MR. STANLEY, WHO REPRESENTS ONE OF THE

23   DEFENDANTS IN THE CASE, I THINK IS JUST A LITTLE LATE, AND I

24   WOULD BE HAPPY TO STAND IN FOR HIS CLIENT.

25              THE COURT:  WHO DOES HE REPRESENT?
```

```
1              DEFENDANT GARIBYAN:  GRIGOR GARIBYAN.

2              THE COURT:  LOUDER.

3              DEFENDANT GARIBYAN:  GRIGOR GARIBYAN.

4              MR. REED:  AND MY UNDERSTANDING IS I THINK HE'S

5    PARKING HIS CAR AND WE WOULD LIKE, OF COURSE, TO GET

6    STARTED.  I WOULD BE HAPPY TO STAND IN FOR MR. STANLEY IF

7    THE COURT WOULD GIVE ME PERMISSION TO DO SO.

8              THE COURT:  WELL, I DON'T HAVE A PROBLEM WITH THAT

9    AS SUCH, AND I APPRECIATE YOU HELPING TO MOVE THIS ALONG.

10   I'M DISAPPOINTED THAT MR. STANLEY IS NOT HERE BECAUSE

11   MR. GARIBYAN HAS FILED A JOINDER, AND SO WE SHOULD HAVE HIM

12   HERE.

13             AND SO I THINK WHAT WE'LL DO IS WE'LL JUST HAVE TO

14   TAKE A FEW MINUTE RECESS, AND THEN WE'LL SEE WHY MR. STANLEY

15   HAS HAD TO HOLD US UP.  AND YOU SAY THAT YOU BELIEVE HE'S

16   SOMEWHERE NEARBY?

17             MR. REED:  I UNDERSTAND THAT HE IS.

18             THE COURT:  OKAY.  I WOULD RATHER NOT GO AHEAD

19   WITH THIS BECAUSE, ALTHOUGH I DON'T THINK THERE WILL BE ANY

20   DETERMINATION OR FACTUAL DISPUTE BECAUSE, IN LIGHT OF WHAT

21   I'M GOING TO SAY, I THINK MUCH OF THE DISPUTED FACTS THAT

22   MAY BE DISPUTED CREATED IN THE DECLARATION IS IMMATERIAL AS

23   FAR AS MY ANALYSIS IS CONCERNED BECAUSE I THINK THIS IS A

24   LEGAL ISSUE.

25             BUT LET'S SEE IF MR. STANLEY COMES HERE WITHIN A
```

DECEMBER 15, 2010

```
 1    FEW MINUTES, AND THEN WE'LL DO THAT.

 2              MR. REED:  YES, YOUR HONOR.

 3              THE COURT:  OKAY.  ALL RIGHT.  WE'LL TAKE A RECESS

 4    UNTIL MR. STANLEY SHOWS UP.

 5              MR. BROOKLIER:  YOUR HONOR, MAY I ADDRESS THE

 6    COURT BRIEFLY?

 7              THE COURT:  YES.

 8              MR. BROOKLIER:  THE COURT MAY ALREADY KNOW THIS,

 9    BUT I JUST FINISHED A TRIAL WITH JUDGE PERCY ANDERSON ON

10    MONDAY.  THE JURY IS DELIBERATING.

11              THE COURT:  I UNDERSTAND.  I GOT A PHONE CALL FROM

12    JUDGE ANDERSON, AND WHAT WE'LL DO IS IF THERE IS A NOTE,

13    HE'S GOING TO CALL MY STAFF WHO WILL LET ME KNOW, AND THEN

14    I'LL MAKE SOME ACCOMMODATIONS FOR YOU.

15              MR. BROOKLIER:  THANK YOU VERY MUCH, YOUR HONOR.

16    I APPRECIATE IT.

17              THE COURT:  ALL RIGHT.  VERY GOOD.

18                  (RECESS TAKEN FROM 9:41 TO 9:48.)

19              THE COURT:  WE'RE BACK ON THE RECORD IN THE MATTER

20    OF UNITED STATES VERSUS GAMBARYAN AND OTHERS.

21              MR. STANLEY -- WHERE'S MR. STANLEY?

22              WHERE WERE YOU AT 9:30?

23              MR. STANLEY:  I APOLOGIZE, YOUR HONOR.  IT WAS A

24    TRAFFIC ACCIDENT, AND I GOT CAUGHT BEHIND IT.  I DID TRY TO

25    CONTACT ALL THE PARTIES, AND I APOLOGIZE.
```

DECEMBER 15, 2010

```
 1              THE COURT:  ALL RIGHT.  LET ME GO AHEAD AND TAKE

 2    UP WHERE I WAS, AND THAT IS I'M NOT GOING TO TAKE UP THE

 3    ISSUE OF WHETHER THERE WAS OR WAS NOT AN EXIGENCY BECAUSE I

 4    DON'T THINK IT'S REQUIRED.

 5              I THINK THE ISSUE FIRST TO BE CONFRONTED, THE

 6    LEGAL QUESTION, IS WHETHER OR NOT REDACTION IS APPROPRIATE

 7    OF THIS WARRANT TO TAKE OUT ANY AND ALL STATEMENTS THAT

 8    RELATE TO OBSERVATIONS MADE POST ENTRY.

 9              ONCE WE DECIDE THAT, WHICH IS A LEGAL QUESTION,

10    THEN THE REMAINING QUESTION WOULD BE WHETHER OR NOT THE

11    REMAINING STATEMENTS IN THE WARRANT WILL BE SUFFICIENT TO

12    ESTABLISH PROBABLE CAUSE.

13              AS WE APPROACH THAT, THERE'S ANOTHER LEGAL

14    QUESTION WHICH IS WHETHER FEDERAL OR STATE LAW APPLIES.

15              AND ONCE WE DETERMINE THAT, THEN WE HAVE TO MAKE

16    THE DETERMINATION AS TO WHETHER WHAT WAS BEFORE THE

17    MAGISTRATE, THE STATE MAGISTRATE AT THE TIME, UNDER

18    WHICHEVER STATE OF THE LAW THAT I DETERMINE -- AFTER I HEAR

19    FROM YOU -- THEN WE WILL DETERMINE WHETHER OR NOT THERE'S

20    PROBABLE CAUSE.

21              IF THERE IS PROBABLE CAUSE, THEN THE MOTIONS WILL

22    BE DENIED.  OTHERWISE, THERE WILL BE A DIFFERENT RULING.

23              THAT IS WHERE I SEE THIS CASE GOING.  I DON'T SEE

24    THERE'S REALLY ANY DISPUTED ISSUES OF MATERIAL FACT AS TO

25    ANY OF THOSE ISSUES.  AND SO I REALLY DON'T THINK AN
```

```
 1    EVIDENTIARY HEARING IS REQUIRED.

 2              IT MAY BE REQUIRED IF WE WERE TO GET INTO

 3    EXIGENCY, BUT IT MAY BE REQUIRED IF WE WERE TO DECIDE THAT

 4    THERE WOULD BE NO REDACTION.  SO THOSE ARE ISSUES THAT MIGHT

 5    COME UP BUT MAY NOT COME UP, DEPENDING UPON HOW I RULE ON

 6    THE LEGAL ISSUES.

 7              SO, MR. REED, YOU FILED A MOTION ALSO ON BEHALF OF

 8    MR. GAMBARYAN.

 9              LET'S START WITH THE FIRST LEGAL ISSUE I WANT TO

10    TALK ABOUT WITH YOU.  ARE YOU GOING TO SPEAK ON BEHALF OF

11    THE OTHER MOVANTS ALSO, OR ARE YOU SPEAKING ONLY ON BEHALF

12    OF MR. GAMBARYAN?

13              MR. REED:  I'M SPEAKING ON BEHALF OF THE PEOPLE

14    WHO JOINED IN THE MOTION, ALL THE PEOPLE WHO JOINED IN THE

15    MOTION.  AND YOUR HONOR, WITH YOUR PERMISSION, I WAS GOING

16    TO FOCUS ON EXIGENCY ARGUMENTS.

17              I DID INTEND TO DO SOME CROSS-EXAMINATION OF

18    DETECTIVE COYLE; BUT SINCE WE'RE BEYOND THAT AND WE'RE GOING

19    TO TALK ABOUT THESE OTHER ISSUES, THE AREA I WAS GOING TO

20    FOCUS ON WITH RESPECT TO THE ARGUMENTS BEFORE THE COURT THIS

21    MORNING WAS WHETHER OR NOT THERE WAS PROBABLE CAUSE UNDER

22    STATE LAW, WHETHER STATE LAW SHOULD BE APPLIED.

23              HOWEVER, MR. BROOKLIER OR MR. WALSH DID WANT TO

24    DISCUSS WITH YOU THE ISSUE OF WHETHER OR NOT WONG SUN

25    APPLIED, WHETHER REDACTION IS APPROPRIATE.  THEY DID WANT TO
```

```
 1    COVER THOSE AREAS WITH YOU AS WELL.

 2            THE COURT:  OKAY.  SO LET ME GO AHEAD AND HAVE

 3    EITHER MR. BROOKLIER AND/OR MR. WALSH TALK TO ME FIRST ABOUT

 4    WHETHER REDACTION IS APPROPRIATE, AND THEN AS WE GO, THEN

 5    WE'LL TALK ABOUT WHETHER IT'S STATE OR FEDERAL LAW AND THEN,

 6    HOWEVER IT APPLIES, WHETHER THERE'S PROBABLE CAUSE.

 7            MR. REED:  VERY WELL, YOUR HONOR.

 8            THE COURT:  ALL RIGHT.  MR. WALSH.

 9            I HOPE YOU FOLKS WON'T REPEAT YOURSELVES, BUT OF

10    COURSE, I WILL PERMIT ANY LAWYER WHO WANTS TO SPEAK TO

11    SPEAK.  BUT I SURE HOPE THAT YOU'RE NOT GOING TO REPEAT

12    YOURSELVES BECAUSE I THINK, AS I HAVE SPENT QUITE A BIT OF

13    TIME THINKING THIS THROUGH, I THINK I'M PRETTY WELL ADVISED

14    ON THE ISSUES, BUT I'M GLAD TO HEAR FROM YOU.

15            MR. WALSH.

16            MR. WALSH:  YES, YOUR HONOR.  OUR POSITION IS THAT

17    THE NINTH CIRCUIT CASE LAW THAT ALLOWS REDACTION, THE REED

18    AND THE VASEY CASE, REALLY MISS --

19            THE COURT:  AND THE HECKENKAMP CASE, WHICH IS A

20    MORE RECENT 2007 CASE.

21            MR. WALSH:  THEY HAVE BASICALLY NOT FOLLOWED THE

22    UNITED STATES SUPREME COURT'S DECISIONS IN SEGURA AND

23    MURRAY BECAUSE, IF YOU ANALYZE THE FACTS OF THE SEGURA AND

24    MURRAY CASE --

25            THE COURT:  LET ME ASK YOU A THRESHOLD QUESTION.
```

DECEMBER 15, 2010

```
 1              LET'S SAY YOU'RE RIGHT BUT, BECAUSE THE NINTH

 2    CIRCUIT CASES ARE POST SUPREME COURT CASES AND BECAUSE TWO

 3    OF THOSE THREE CASES THAT YOU CITED -- THAT IS, REED AND

 4    HECKENKAMP -- SPECIFICALLY CITE MURRAY AND PURPORT TO SAY

 5    THAT THIS IS IMPLICITLY CONSISTENT WITH MURRAY --

 6              THEY CITE MURRAY, AND THEN THEY GO ON AND SAY

 7    "REDACTION IS FINE."

 8              -- DO I HAVE ANY AUTHORITY TO SAY, YOU KNOW WHAT,

 9    CIRCUIT, YOU JUST GOT IT WRONG?

10              THAT'S NOT THE WAY I READ THOSE CASES.  MY STRONG

11    FEELING -- AND I'LL BE GLAD TO HEAR FROM YOU IF YOU HAVE A

12    CITATION FOR ME -- IS THAT I HAVE NO AUTHORITY.  EVEN IF I

13    DISAGREE AND EVEN IF I AGREE WITH YOU, I HAVE NO AUTHORITY,

14    GIVEN THAT TEMPORAL LINEUP, FOR ME TO SAY "THE NINTH CIRCUIT

15    IS WRONG AND I'M NOT BOUND BY IT."

16              THE ONLY TIME I CAN SAY THAT IS IF THERE IS AN

17    INTERVENING HIGHER COURT AUTHORITY.  SO IF HECKENKAMP, REED,

18    AND THE OTHER CASE -- I THINK, VASEY -- HAD BEEN DECIDED AT

19    TIME ONE, BUT THERE IS A U.S. SUPREME COURT CASE DECIDED AT

20    TIME TWO AND I'M OF THE VIEW THAT THE U.S. SUPREME COURT

21    CASE UNDERCUT THE VITALITY OF THOSE NINTH CIRCUIT CASES

22    DECIDED AT TIME ONE, THEN THE LAW IS VERY CLEAR THAT I HAVE

23    TO FOLLOW WHAT THE SUPREME COURT SAID, NOTWITHSTANDING WHAT

24    THE NINTH CIRCUIT HAD PREVIOUSLY SAID.

25              THAT'S NOT WHAT WE HAVE HERE.
```

DECEMBER 15, 2010

```
 1            DO YOU HAVE SOME AUTHORITY AS A THRESHOLD MATTER

 2   THAT, GIVEN THE TEMPORAL LINEUP HERE, THAT I CAN EVEN BE

 3   PERMITTED TO DISAGREE WITH WHAT THE NINTH CIRCUIT SAYS?

 4            MR. WALSH:  WELL, THE ONLY AUTHORITY IS THE

 5   STARE DECISIS PRINCIPLE THAT THE COURT IS BOUND BY THE

 6   HOLDINGS OF THE UNITED STATES SUPREME COURT DECISIONS

 7   PRIMARILY.

 8            THE COURT:  BUT THEY'RE NOT SAYING THAT THEY'RE

 9   NOT BOUND.  THEY'RE PURPORTING TO SAY OUR DECISION IN REED

10   AND HECKENKAMP IS FULLY CONSISTENT WITH MURRAY; IN FACT, WE

11   CITE MURRAY.

12            ISN'T REALLY YOUR ARGUMENT, THEN, YOU SHOULD GO TO

13   THE CIRCUIT AND SAY "THOSE PANEL DECISIONS ARE JUST WRONG,

14   AND YOU NEED TO REVERSE IT EN BANC," FAILING WHICH, YOU NEED

15   TO TAKE IT TO THE SUPREME COURT AND SAY, "HEY, THE NINTH

16   CIRCUIT IS NOT FOLLOWING WHAT YOU'RE SAYING IN MURRAY AND

17   THIS REDACTION THING IS ILLEGITIMATE"?

18            BUT YOU CAN'T COME TO A DISTRICT JUDGE, UNDER

19   THESE CIRCUMSTANCES IT SEEMS TO ME, AND SAY THAT I HAVE THE

20   AUTHORITY TO DO WHAT YOU'RE ASKING ME.

21            IF YOU HAVE SOME DIFFERENT AUTHORITY, GIVEN THIS

22   TEMPORAL LINEUP THAT, NEVERTHELESS, I CAN RECONSIDER IT --

23   IN EFFECT -- AND REJECT VERY CLEAR CIRCUIT AUTHORITY IN

24   HECKENKAMP, 2007 CASE; REED, VASEY -- I THINK THOSE ARE 1980

25   OR '90S CASES.  UNLESS YOU HAVE THAT AUTHORITY, WE'RE
```

DECEMBER 15, 2010

```
 1    WASTING OUR TIME BECAUSE I CAN'T DO WHAT YOU ASKED ME TO DO.

 2              MR. WALSH:  WELL, OUR POSITION IS WE BELIEVE THE

 3    COURT CAN DO IT, THE COURT CAN MAKE A DETERMINATION THAT

 4    IT'S BOUND BY THE DECISIONS OF THE UNITED STATES SUPREME

 5    COURT OVER THOSE OF THE NINTH CIRCUIT.

 6              I UNDERSTAND THE COURT'S POSITION THAT THAT'S A

 7    DIFFICULT WAY OF RULING SINCE THE COURT IS ALSO BOUND BY

 8    NINTH CIRCUIT DECISIONS.

 9              THE COURT:  IT'S ONLY DIFFICULT IN DOING -- IT'S

10    NOT DIFFICULT IF THERE'S BEEN AN INTERVENING SUPREME COURT

11    CASE.

12              I HAVE EVERY RIGHT AND AUTHORITY TO SAY THAT THE

13    INTERVENING CASE, IF I BELIEVE UNDER MY NINTH CIRCUIT

14    AUTHORITY, THAT I WOULD DISREGARD NINTH CIRCUIT AUTHORITY.

15              THAT'S NOT WHAT HAPPENED HERE.  IT'S THE OPPOSITE.

16              THE SUPREME COURT CASES HAPPENED FIRST, AND THE

17    NINTH CIRCUIT CASES PURPORTED TO EMBRACE ONE OF THE CASES

18    THAT YOU CITED AND, YET, FELT THAT REDACTION WAS

19    APPROPRIATE.

20              I DON'T THINK, UNDER THOSE CIRCUMSTANCES, I HAVE

21    ANY RIGHT TO DO SO.  ASIDE FROM THAT, I ACTUALLY DISAGREE ON

22    THE SUBSTANCE WITH YOUR ARGUMENT TOO BECAUSE I THINK THERE'S

23    NOTHING IN MURRAY WHICH WOULD SUGGEST THAT THE NINTH CIRCUIT

24    CASES ARE IMPROPER OR INCORRECT.

25              BUT BE THAT AS IT MAY, I THINK THE THRESHOLD
```

DECEMBER 15, 2010

```
1    ISSUE -- IF YOU HAVE ANYTHING ELSE TO SAY ABOUT IT, GO

2    AHEAD, BUT I DON'T REALLY THINK THAT SHOULD DETAIN US MUCH

3    LONGER.

4            MR. WALSH:  VERY WELL, YOUR HONOR.

5            JUST TO POINT OUT THAT I BELIEVE YOUR HONOR IS

6    CORRECT, THERE'S NOTHING BEYOND SEGURA AND MURRAY.  THE U.S.

7    SUPREME COURT HASN'T TAKEN UP THIS ISSUE.

8            AND, SECONDARILY, ON THE MERITS, WE THINK THAT THE

9    APPROPRIATE APPLICATION OF SEGURA AND MURRAY IS THAT THE

10   OFFICERS HAVE TO REDACT THE ILLEGAL INFORMATION FROM THE

11   SEARCH WARRANT AFFIDAVIT BEFORE THEY APPLY TO THE MAGISTRATE

12   BECAUSE THEN THE SEARCH WARRANT AFFIDAVIT TRULY BECOMES AN

13   INDEPENDENT SOURCE -- IT HAS THEIR PRE-EXISTING PROBABLE

14   CAUSE; IT DOESN'T INCLUDE THE INFORMATION OF THE ILLEGAL

15   SEARCH -- AND THEREFORE, THERE'S NO POSSIBILITY THAT THE

16   MAGISTRATE COULD BE INFLUENCED BY THE ILLEGAL SEARCH.

17           AND IN THIS CASE, YOU SEE THE OFFICER'S

18   PRE-EXISTING PROBABLE CAUSE RAISED AN INFERENCE THAT THERE

19   WAS MARIJUANA INSIDE UNIT D, AND IT WAS THE ILLEGAL SEARCH

20   ITSELF WHERE THEY WENT IN WITHOUT THE WARRANT THAT CONFIRMED

21   THAT.  AND BASICALLY, THEY PUT IN THE AFFIDAVIT THAT WE HAD

22   THIS PRE-EXISTING PROBABLE CAUSE, WE CONFIRMED IT BY GOING

23   IN WITH ILLEGAL SEARCH AND SAW THE MARIJUANA.

24           SO AT THAT POINT, WHEN THEY PUT THAT IN THE

25   SEARCH WARRANT AFFIDAVIT AND THEY'RE APPLYING FOR A SEARCH
```

```
 1   WARRANT AFFIDAVIT, IT'S A HUNDRED PERCENT CERTAINTY, AT THAT

 2   POINT IN TIME, THAT THERE'S MARIJUANA IN UNIT D, AND NO

 3   MAGISTRATE WOULD EVER DENY ISSUING THAT WARRANT.  AND THAT'S

 4   THE PROBLEM THAT WE SEE.

 5             WE THINK THAT A PROPER ANALYSIS OF MURRAY AND

 6   SEGURA IS THAT THE OFFICER HAS TO DO THE REDACTING FIRST,

 7   THAT HE CANNOT USE THE INFORMATION FROM THE ILLEGAL SEARCH,

 8   THAT HE HAS TO SET FORTH HIS INDEPENDENT INFORMATION,

 9   PRE-EXISTING PROBABLE CAUSE IN THE AFFIDAVIT AND THEN SUBMIT

10   THAT TO THE MAGISTRATE IN ORDER TO COMPLY WITH SEGURA AND

11   MURRAY.

12             AND THEN, IN THINKING ABOUT WHY THE CASES AND THE

13   NINTH CIRCUIT CASES AND OTHER CASES HAVE GONE THIS OTHER

14   DIRECTION WHICH ALLOW THE REDACTION, EVEN THOUGH THE ILLEGAL

15   INFORMATION IS PLACED IN THE WARRANT.

16             AND, SECONDARILY, THE SILVERTHORNE LUMBER CASE

17   SEEMS TO HAVE A PRETTY GOOD ANALYSIS AND APPLICATION HERE

18   BECAUSE IN SILVERTHORNE THEY ILLEGALLY SEIZE SOME BOOKS AND

19   RECORDS, AND THEN THE COURT RULED THAT'S AN ILLEGAL SEARCH.

20   SO THEY GAVE THE BOOKS AND RECORDS BACK TO THE DEFENDANT,

21   AND THEN THEY APPLIED FOR THE WARRANT, AND THEN SEIZED THE

22   BOOKS AND RECORDS.

23             AND IT SAYS, IF YOU USE THE INFORMATION THAT THE

24   DEFENDANT NOW HAS THE RECORDS BECAUSE YOU LEARNED OF IT FROM

25   THE FIRST ILLEGAL SEARCH, THEN YOUR SEARCH WARRANT IS
```

1    TAINTED BY THAT ILLEGAL SEARCH AND THE SECOND SEIZURE IS

2    ALSO ILLEGAL.

3             AND SO WE THINK THAT THAT ANALYSIS IS MORE

4    APPROPRIATE TO THIS REDACTION APPROACH THAT THE NINTH

5    CIRCUIT HAS TAKEN.

6             AND THEN IN LOOKING BACK AT HISTORICALLY HOW THIS

7    REDACTION AND INDEPENDENT SOURCE CASE WAS APPLIED, IT

8    APPEARS AS THOUGH THE CASES WERE RELYING ON THE

9    UNITED STATES SUPREME COURT CASE IN GIORDANO, WHICH WAS

10   THAT WIRETAPPING CASE WHERE THE HOLDING OF THE CASE WAS

11   THAT, IF THE PROPER JUSTICE DEPARTMENT OFFICIAL DIDN'T

12   AUTHORIZE THE WARRANT FOR A WIRETAP, THEN ALL THE WIRETAP

13   CALLS ARE ILLEGAL.

14            THEN THE GOVERNMENT USED THOSE ILLEGAL CALLS TO

15   OBTAIN A PEN REGISTER, AND THE HOLDING OF THE CASE WAS THAT

16   SINCE THE WIRETAP CALLS WERE ILLEGAL, IT TAINTED THE PEN

17   REGISTER AND REQUIRED THE SUPPRESSION OF THE PEN REGISTER.

18            THE DISSENTING OPINION SAID NO, NO, THERE'S AN

19   INDEPENDENT SOURCE.  THEY COULD HAVE GOTTEN THE PEN REGISTER

20   FOR OTHER INDEPENDENT PROBABLE CAUSE, INDEPENDENT OF THOSE

21   PHONE CALLS, BUT THAT'S THE DISSENTING OPINION IN THE CASE.

22            AND THE NINTH CIRCUIT OPINIONS THAT ALLOW THIS

23   REDACTION AND INDEPENDENT SOURCE, THEY KEEP CITING TO THE

24   GIORDANO DISSENTING OPINION AS LEGAL AUTHORITY -- AND

25   ACTUALLY IT'S NOT REALLY LEGAL AUTHORITY.  IT'S BASICALLY

```
 1    THE DICTA OF THAT DISSENTING OPINION IN THE GIORDANO CASE.

 2          SO I THINK THERE'S BEEN A MISAPPLICATION OF

 3    GIORDANO THAT HAS AUTHORIZED THESE NINTH CIRCUIT CASES TO

 4    REDACT AND RETEST WHEN THEY DON'T REALLY FIT WITHIN THE

 5    FACTS OF SEGURA AND MURRAY, AND I'LL LEAVE IT AT THAT,

 6    YOUR HONOR.

 7          THE COURT:  YOU KNOW, I'M NOT SAYING THAT YOUR

 8    ARGUMENT DOESN'T HAVE SOME FORCE.  I THINK IT'S A VERY

 9    PLAUSIBLE ARGUMENT.

10          THE ONLY QUESTION I HAVE FOR YOU IS WHAT IS THE

11    CONCEPTUAL DIFFERENCE BETWEEN REDACTION HERE AND REDACTION

12    UNDER FRANKS?

13          MR. WALSH:  BECAUSE FRANKS WAS AUTHORIZED BY THE

14    UNITED STATES SUPREME COURT CASE IN FRANKS VERSUS DELAWARE.

15          THE COURT:  AND IF THE SUPREME COURT AUTHORIZED

16    REDACTION UNDER CIRCUMSTANCES WHERE THE OFFICER HAD LIED OR

17    HAD BEEN IN RECKLESS DISREGARD OF THE TRUTH, AND THAT'S

18    STILL OKAY TO REDACT AND THEN TO SEE WHETHER OR NOT WE

19    APPLY -- THEN WE APPLY THE MATERIALITY STANDARD AS TO

20    WHETHER OR NOT THERE WAS STILL PROBABLE CAUSE, WHAT MAKES

21    YOU THINK THAT THE SUPREME COURT WOULD NOT BE OF THE SAME

22    VIEW WHEN IT COMES TO THIS SITUATION?

23          MR. WALSH:  WELL, THE ONLY RESPONSE IS THAT OUR

24    SITUATION, WHERE THERE'S AN ILLEGAL SEARCH THAT'S PUT IN THE

25    SEARCH WARRANT AND THEN REDACTED, IS VERY CLOSE TO THE
```

DECEMBER 15, 2010

```
 1   SITUATION OF THE SILVERTHORNE LUMBER COMPANY, WHERE THERE

 2   WAS, IN FACT, AN ILLEGAL SEARCH AND SEIZURE OF THOSE BOOKS

 3   AND RECORDS, AND THEN THEY WERE RETURNED TO THE DEFENDANT.

 4           AND THEN THERE WAS A SUBSEQUENT SEARCH WARRANT

 5   AFFIDAVIT, WHICH SPECIFICALLY PUT IN INFORMATION ABOUT THE

 6   FIRST ILLEGAL SEARCH; AND SO I WOULD SAY THAT THERE IS AT

 7   LEAST A HOPE THAT THE UNITED STATES SUPREME COURT WOULD NOT

 8   APPLY THE FRANKS REDACTION FRAMEWORK TO A CASE WHERE THERE'S

 9   AN ILLEGAL SEARCH BECAUSE THEY'VE EFFECTIVELY RULED ON IT

10   EARLIER IN THE SILVERTHORNE LUMBER CASE THAT, WHEN YOU HAVE

11   AN ILLEGAL SEARCH, THE INFORMATION FROM THE ILLEGAL SEARCH

12   CANNOT THEREAFTER BE PUT IN A SUBSEQUENT SEARCH WARRANT IN

13   ORDER TO SEIZE ADDITIONAL EVIDENCE.

14           THE COURT:  RIGHT.

15           MR. WALSH:  THAT'S THE ONLY DISTINCTION THAT I'VE

16   BEEN ABLE TO COME UP WITH BETWEEN FRANKS AND THIS SITUATION.

17           THE COURT:  BUT THAT DOESN'T ANSWER THE QUESTION

18   BECAUSE -- ANSWER THE QUESTION "WHY CAN'T YOU DO THE SAME

19   THING" BECAUSE THE SUPREME COURT DID DO THE SAME THING IN

20   FRANKS, ALBEIT IN A DIFFERENT CONTEXT -- ARGUABLY, IN A

21   WORSE CONTEXT WHEN AN OFFICER IS AT LEAST SHOWN TO HAVE, NOT

22   ACTUALLY NECESSARILY, BUT CERTAINLY THE DEFENDANT WOULD HAVE

23   ALREADY HAD TO MAKE A SHOWING THAT THIS WAS A LIE OR

24   RECKLESS DISREGARD OF THE TRUTH.  THAT'S PRETTY BAD STUFF.

25           BUT THE SUPREME COURT SAID FINE, CUT IT OUT;
```

DECEMBER 15, 2010

```
 1    ANYTHING THAT THEY OMITTED THAT THEY SHOULDN'T HAVE, PUT IT

 2    BACK IN; TEST IT FOR MATERIALITY.

 3              ANYWAY, IT'S AN INTERESTING POINT, AND I THINK YOU

 4    MAKE SOME PLAUSIBLE ARGUMENT.  ULTIMATELY, I THINK I'M BOUND

 5    BY THE CIRCUIT AUTHORITY AND THAT WE SHOULD MOVE ON.

 6              MR. WALSH:  VERY WELL.

 7              THE COURT:  ARE YOU ALSO GOING TO ADDRESS OR IS

 8    MR. BROOKLIER GOING TO ADDRESS -- I THINK THERE WAS ANOTHER

 9    ISSUE, NOT IN TERMS OF REDACTION, BUT IN TERMS OF THE

10    APPLICATION OF STATE LAW OR FEDERAL LAW.

11              MR. REED:  I'LL BE DOING THAT, YOUR HONOR.

12              THE COURT:  AND, MR. BROOKLIER, MR. REED SAID YOU

13    WERE GOING TO MAKE AN ARGUMENT ABOUT SOMETHING.  I'M NOT

14    SURE WHAT THAT IS.  I'LL GIVE YOU THE OPPORTUNITY TO DO IT

15    NOW, IF YOU WANT TO.

16              MR. BROOKLIER:  IF I MAY, I'LL SEE HOW IT GOES,

17    AND IF IT'S NECESSARY, I'LL LET YOU KNOW.

18              THE COURT:  YOU'LL SEE HOW THESE GUYS DO, AND THEN

19     IF THEY NEED TO BE BACKED UP, I GUESS, YOU'LL BACK THEM UP.

20    RIGHT?

21              MR. BROOKLIER:  I'M JUST A PINCH HITTER, IN

22    THEORY.

23              THE COURT:  OKAY.  VERY GOOD.  ALL RIGHT.

24              MR. REED, IN TERMS OF STATE OR FEDERAL LAW.

25              MR. REED:  YOUR HONOR --
```

```
 1              THE COURT:  YOU KNOW, ACTUALLY, LET ME HEAR FROM

 2    MR. WOLFE ON THAT.  OKAY.  WHY DON'T YOU HAVE A SEAT.

 3              MR. WOLFE, LET ME TALK TO YOU ABOUT THAT.

 4              MR. WOLFE, THE GOVERNMENT'S POSITION, WITH ALL DUE

 5    RESPECT, IS OVERLY SIMPLIFIED.

 6              AND I HAVE SPENT SOME TIME IN LOOKING AT THESE

 7    CASES VERY, VERY CLOSELY.  AND THESE CASES INCLUDE THE

 8    CHAVEZ CASE; A DISTRICT COURT CASE CALLED UNITED STATES

 9    VERSUS BRADY; A SUBSEQUENT NINTH CIRCUIT CASE CALLED

10    UNITED STATES VERSUS CORMIER; AND, OF COURSE, THE VERY

11    RECENT NINTH CIRCUIT CASE OF UNITED STATES OF AMERICA VERSUS

12    $186,000-AND-CHANGE IN UNITED STATES CURRENCY.

13              AND IN LOOKING AT THOSE CASES, AMONG OTHERS, IT

14    APPEARS THAT THE ANALYSIS IS PERHAPS MORE NUANCED THAN THE

15    GOVERNMENT'S OPPOSITION GAVE IT CREDIT FOR.

16              I DON'T THINK ANYBODY REALLY DISPUTES THE GENERAL

17    PROPOSITION THAT, WHEN YOU'RE IN FEDERAL COURT, YOU'RE

18    TALKING ABOUT ADMISSIBILITY OF EVIDENCE, THE FEDERAL RULES

19    APPLY.  AND I THINK THE CASES SUCH AS CHAVEZ, BRADY AND

20    CORMIER DO STAND FOR THAT PROPOSITION.

21              BUT THOSE ARE CASES WHERE THE CONTRARY STATE RULE

22    IS JUST SOMETHING THAT STATE COURTS WOULD APPLY SUCH AS

23    CONSENT.  IN ORDER TO HAVE CONSENT UNDER THE STATE RULE IN

24    THAT CASE, YOU HAVE TO HAVE AFFIRMATIVELY TOLD THEM "YOU

25    DON'T HAVE TO CONSENT."  WELL, THAT'S NOT THE FEDERAL RULE.
```

DECEMBER 15, 2010

```
 1    WE ALL KNOW THAT.  AND IT MAY BE A FACTOR, BUT IT'S NOT

 2    ABSOLUTELY REQUIRED.

 3            AND THEN I THINK IN THE CHAVEZ CASE, ALTHOUGH THE

 4    FACTS ARE SOMEWHAT UNCLEAR, SOMEHOW THE STATE OFFICERS WENT

 5    AND GOT SOME BANK RECORDS.  OKAY.  I DON'T KNOW WHAT THEY

 6    DID IN THE BANK RECORDS.  PRESUMABLY, THEY GOT SOME BANK

 7    RECORDS UNDER STATE LAW THAT WOULD HAVE VIOLATED STATE LAW.

 8            OKAY.  SO IT MAKES PERFECT SENSE THAT, IF WE'RE IN

 9    FEDERAL COURT, EVEN THOUGH THEY GOT IT THAT WAY, WE WOULD

10    APPLY THE FEDERAL STANDARD AS TO WHETHER OR NOT THEY'RE

11    PROPER OR NOT PROPER.  LIKEWISE, THE THIRD CASE WHERE

12    THERE'S A QUESTION AS TO PROBABLE CAUSE.  BUT THE MORE

13    GENERALIZED INQUIRY FIRST OF WHAT IS PROBABLE CAUSE, WHAT IS

14    THE STANDARD OF PROBABLE CAUSE?

15            IS IT THE OLD AGUILAR-SPINELLI STANDARD, OR IS IT

16    THE MORE ILLINOIS VERSUS GATES TOTALITY OF THE CIRCUMSTANCES

17    STANDARD.  AND OF COURSE, WE WOULD APPLY ILLINOIS VERSUS

18    GATES TOTALITY OF THE CIRCUMSTANCES, REGARDLESS OF IF THE

19    STATE COURTS CLUNG ON TO SPINELLI OR WHATEVER.  THAT'S FINE.

20            I DON'T THINK THERE'S REALLY MUCH DISPUTE YET.

21            WHAT WE HAVE HERE IS SOMETHING THAT IS NOT COVERED

22    BY THOSE CIRCUMSTANCES BUT IS REALLY MORE COVERED BY THE

23    SECOND EXCEPTION NOTED IN THE CORMIER CASE; AND THAT IS, IN

24    THIS CASE, THE PROBABLE CAUSE, ALBEIT DETERMINED UNDER THE

25    TOTALITY OF THE CIRCUMSTANCES --
```

```
 1              THERE'S NO DISPUTE ANYWAY, BY THE WAY, IN THIS

 2    CASE.  I DON'T THINK CALIFORNIA CLINGS TO ANY OF THE

 3    SPINELLI-AGUILAR STANDARD ANYWAY.

 4              BUT WE'RE GOING TO USE THE TOTALITY OF THE

 5    CIRCUMSTANCES FOR PROBABLE CAUSE.  FAIR ENOUGH.  PROBABLE

 6    CAUSE IS NOT ASSESSED IN A VACUUM.  PROBABLE CAUSE IS

 7    INEXTRICABLY INTERTWINED TO THE UNDERLYING STATE LAW

 8    VIOLATION.

 9              SO HERE, IF THE STATE LAW VIOLATION -- AND

10    CLEARLY THESE OFFICERS WERE DOING IT UNDER STATE LAW.

11    THERE'S NO INDICATION THEY WERE OPERATING WITH FEDERAL

12    OFFICERS SEEKING TO ENFORCE FEDERAL MARIJUANA LAW.  VERY

13    MUCH LIKE UNITED STATES VERSUS $187,000 WHERE THE NINTH

14    CIRCUIT MADE THAT VERY CLEAR AND DREW THAT DISTINCTION.

15              THEN THE PROBABLE CAUSE STANDARD HAS TO BE

16    ATTACHED TO WHATEVER IT IS THAT YOU'RE SEEKING PROBABLE

17    CAUSE THAT'S BASED ON AND, HERE, BASED UPON ALLEGED

18    VIOLATION OF THE MARIJUANA LAWS OF THE STATE OF CALIFORNIA.

19              SO THEN YOU HAVE TO LOOK AT -- YOU NECESSARILY

20    HAVE TO LOOK AT WHAT ARE THE ELEMENTS OF THE UNLAWFUL

21    CULTIVATION OF MARIJUANA UNDER CALIFORNIA LAW.

22              BECAUSE, AS THE NINTH CIRCUIT POINTED OUT IN

23    UNITED STATES VERSUS 186,000, IT WOULD BE A FEDERAL

24    CONSTITUTIONAL VIOLATION IF THERE WAS NO PROBABLE CAUSE TO

25    SEARCH BASED UPON A FAILURE TO HAVE PROBABLE CAUSE
```

1    PREDICATED ON THIS STATE LAW VIOLATION.

2            SO IT REALLY IS NOT SOMETHING WHERE WE CAN CLEARLY

3    SAY FEDERAL LAW APPLIES; DOESN'T MATTER.  FEDERAL LAW DOES

4    APPLY.  BUT IN THIS CASE, IT'S MORE NUANCED BECAUSE IT IS

5    LINKED NECESSARILY TO A STATE LAW VIOLATION.

6            SO MY FEELING IS WE APPLY FEDERAL LAW, BUT WE

7    CANNOT IGNORE WHAT THE ELEMENTS ARE OF A STATE LAW VIOLATION

8    BECAUSE THE PROBABLE CAUSE IS NECESSARILY VIEWED THROUGH THE

9    LENS OF THE ELEMENTS OF THE STATE LAW CRIME.

10           NOW, IF YOU HAVE A DISAGREEMENT WITH THAT, YOU MAY

11   BE HEARD ON THAT.  IF YOU DON'T DISAGREE WITH THAT ANALYSIS,

12   I DON'T....

13           MR. WOLFE:  YOUR HONOR, PERHAPS I CAN -- I DO

14   DISAGREE.  IF YOUR HONOR WANTS TO STOP AT YOUR HONOR'S

15   THINKING THERE....

16           THE COURT:  GO AHEAD.

17           MR. WOLFE:  YOUR HONOR, I DISAGREE THAT THIS CASE

18   IS LIKE THE SECOND EXCEPTION IN CORMIER, AND I SAY THAT

19   BECAUSE IN CORMIER, THE SECOND EXCEPTION IS FOR SEARCHES

20   INCIDENT TO ARREST.

21           AND IT CANNOT MAKE SENSE -- I SUBMIT, IF THE

22   ARREST AND THE SEARCH TOOK PLACE BY STATE OFFICERS UNDER

23   STATE LAW ON DAY ONE, IT WOULD NOT MAKE SENSE FOR A FEDERAL

24   COURT A WEEK LATER OR A YEAR LATER TO SAY NO, WE'RE GOING TO

25   CONSIDER AN ARREST UNDER FEDERAL LAW.

DECEMBER 15, 2010

```
 1              BUT THIS IS NOT ABOUT A SEARCH INCIDENT ARREST;

 2    IT'S ABOUT A SEARCH.

 3              AND THE INTERESTING THING ABOUT THE CASES THAT

 4    YOUR HONOR CITES ARE THAT CHAVEZ AND CORMIER AND BRADY,

 5    BECAUSE THEY RELY ON IT, THEY DERIVED THEIR -- THEY START

 6    THE ANALYSIS AT RULE 402 IN RELEVANCE AND SAY THAT ALL

 7    EVIDENCE IS RELEVANT WHICH DOES NOT OFFEND THE FEDERAL

 8    CONSTITUTION, THE FEDERAL LAW, THE FEDERAL RULES AND

 9    REGULATIONS.

10              AND, THEN, CHAVEZ-VERNAZA GOES ON TO MAKE VERY

11    POSITIVE STATEMENTS ABOUT THE VICES OF ALLOWING STATE RULES

12    TO BE CONSIDERED.  IT WOULD DESTROY UNIFORMITY.  THE

13    CHAVEZ-VERNAZA COURT POINTED TO TWO OTHER CIRCUIT COURTS OF

14    APPEAL THAT DECIDED CASES THE SAME WAY CHAVEZ-VERNAZA

15    DOES.

16              IT WOULD MEAN THAT THE FEDERAL INTERESTS IN

17    ENFORCEMENT ARE AT THE MERCY OF STATE LEGISLATURES AND

18    RULES.  IT'S A VERY BRIGHT LINE RULE, AND THE OTHER CASES

19    THAT APPLY THAT ANALYSIS ARE SIMILARLY POSITIVE ABOUT IT.

20              THE 186 OR 187,000-DOLLAR CASE, IT SEEMS TO ME, IS

21    PLAINLY THE OUTLIER, BOTH ON ITS FACTS AND ON ITS ANALYSIS.

22              IT'S AN OUTLIER FOR THREE OR FOUR SEPARATE

23    REASONS.  ONE IS THAT THE UNITED STATES DID NOT APPEAL THE

24    DISTRICT COURT SUPPRESSION ORDER IN $186,000.  SO THAT THE

25    CIRCUIT SAYS WE'RE NOT -- IT'S NOT BEFORE US WHETHER THE
```

DECEMBER 15, 2010

```
1    COURT WAS RIGHT.  THE ONLY THING THAT'S BEFORE US IS THE

2    FACT THAT THE COURT SAID IT'S ILLEGAL UNDER ONE OF TWO

3    THEORIES; WE HAVE TO CHOOSE WHICH ONE WE'RE GOING TO BE

4    BOUND BY SINCE IT IS UNDISPUTED BY THE PARTIES.

5              I HAVE IN MIND --

6              THE COURT:  WELL, ACTUALLY THE $187,000 CASE, THE

7    CIRCUIT DISAPPROVED THE RULE 11 RULING BUT FOUND THAT IT WAS

8    A FOURTH AMENDMENT VIOLATION PRECISELY FOR WHAT I SAID; THAT

9    IS, STATE WARRANTS MUST ADHERE TO FEDERAL CONSTITUTIONAL

10   STANDARDS.

11             SO HERE, THERE IS NO WAY WE CAN DIVORCE PROBABLE

12   CAUSE TO DO THIS SEARCH BECAUSE THE PROBABLE CAUSE TO DO THE

13   SEARCH, IF AT ALL, IS BASED UPON A BELIEF THAT THERE'S A

14   VIOLATION OF STATE LAW.

15             IF THERE IS NO VIOLATION OF STATE LAW OR THERE'S

16   NO PROBABLE CAUSE TO BELIEVE THAT THERE IS A VIOLATION OF

17   STATE LAW, THEN THAT IS A FEDERAL CONSTITUTIONAL VIOLATION

18   FOR THEM TO HAVE SEARCHED THE PLACE.

19             SO THAT'S REALLY THE DISTINCTION.

20             YOU CANNOT, UNDER ANY CIRCUMSTANCES, DIVORCE

21   YOURSELF AS CHAVEZ CAN, AS CORMIER CAN, AS BRADY CAN BECAUSE

22   THOSE CIRCUMSTANCES ARE NOT INEXTRICABLY TIED TO THE MERITS

23   OF A STATE CRIMINAL STATUTE AND ITS ELEMENTS.

24             ONE IS SOMETHING, BANK RECORDS; ONE IS THE CONSENT

25   THING; AND ONE IS A WAY OF VIEWING THE PROBABLE CAUSE WHICH
```

DECEMBER 15, 2010

```
 1   IS DIFFERENT.  NONE OF THAT IS WHAT WE HAVE HERE AND WHAT

 2   186,000 HAD, WHICH IS WHERE IT'S INEXTRICABLY LINKED TO

 3   THAT.

 4              NOW, I'M GOING TO LET YOU FINISH THAT THOUGHT.

 5                        (PAUSE.)

 6              THE COURT:  I APOLOGIZE FOR THIS.  I JUST GOT A

 7   NOTE HERE THAT THERE IS SOMETHING WHERE MR. BROOKLIER IS

 8   GOING TO BE NEEDED BEFORE JUDGE WILSON FOR A FEW MOMENTS.

 9   SO I'M GOING TO RECESS AND EXCUSE MR. BROOKLIER.

10              PLEASE TRY TO COME BACK JUST AS QUICKLY AS YOU

11   CAN.  OKAY.

12              I APOLOGIZE FOR HAVING TO INTERRUPT THAT, BUT YOU

13   CAN PERHAPS GATHER YOUR THOUGHTS IN LIGHT OF WHAT I JUST

14   SAID.

15              MR. BROOKLIER:  YOUR HONOR, IT'S JUDGE ANDERSON.

16              THE COURT:  JUDGE ANDERSON.  I'M SORRY.

17              MR. BROOKLIER:  THANK YOU.  I'LL BE RIGHT BACK.

18                   (RECESS TAKEN 10:16 TO 10:58 A.M.)

19              THE CLERK:  PLEASE REMAIN SEATED AND COME TO

20   ORDER.  THIS U.S. DISTRICT COURT IS BACK IN SESSION.

21              THE COURT:  WE'RE BACK ON THE RECORD IN THE MATTER

22   OF U.S. VERSUS GAMBARYAN AND OTHERS.

23              COUNSEL ARE PRESENT.  ALL THE DEFENDANTS ARE

24   PRESENT.

25              ALL RIGHT.  MR. WOLFE, THANK YOU FOR YOUR
```

DECEMBER 15, 2010

```
 1   PATIENCE.  LET ME GIVE YOU THE OPPORTUNITY TO RESPOND TO

 2   WHAT I HAD PREVIOUSLY SAID BEFORE OUR RECESS.

 3              MR. WOLFE:  YOUR HONOR, THINKING ABOUT THIS, I'D

 4   MAKE THESE POINTS ABOUT WHY THE $187,000 CASE IS THE OUTLIER

 5   IN THE ANALYSIS.

 6              IT'S BECAUSE THE FACTS IN THAT CASE ARE UNIQUE, AS

 7   THE COURT SAID IN ITS OPINION, AND THE VIOLATION THERE WAS

 8   ALSO A FEDERAL VIOLATION; THAT IS, THE VIOLATION WAS

 9   ESSENTIALLY A FRANKS VIOLATION.

10              THE COURT, IN ITS OPINION, MADE THE POINT AGAIN

11   AND AGAIN THAT THE L.A.P.D. HAD IN HAND INFORMATION THAT THE

12   MEDICAL DISPENSARY WAS NOT ONLY NOT COMMITTING A CRIME, BUT

13   ITS ACTIVITY WAS PROBABLY LEGAL UNDER CALIFORNIA LAW.  AND

14   THE COURT MADE THE POINT THAT, IN PAGE 952, THEY RECITE HALF

15   A PAGE OF MATERIAL ABOUT WHY THE INFORMATION THAT THE

16   L.A.P.D. HAD IN DISCUSSING WHY THE DISTRICT COURT REJECTED

17   THE PROBABLE CAUSE ANALYSIS.

18              THE DISTRICT COURT -- THE ANALYSIS DESCRIBED ON

19   PAGE 948, THE POINT YOUR HONOR MADE ABOUT THE COURT

20   REJECTING THE RULE 11 ANALYSIS.

21              THE COURT:  THE RULE 41 ANALYSIS.

22              MR. WOLFE:  I'M SORRY.

23              THE COURT:  THE RULE 41 ANALYSIS.

24              MR. WOLFE:  YES, I'M SORRY.  I MISSPOKE,

25   YOUR HONOR.
```

DECEMBER 15, 2010

1          THEY MADE THE POINT THAT THE DISTRICT COURT SAID

2     THAT THE FOURTH AMENDMENT MANDATES THAT A DEFENDANT BE

3     PERMITTED TO CHALLENGE A WARRANT AFFIDAVIT VALID ON ITS FACE

4     WHEN IT CONTAINS DELIBERATE OR RECKLESS OMISSIONS OF FACTS

5     THAT TEND TO MISLEAD.

6          AND THE NINTH CIRCUIT ALSO EMPHASIZED TWO OTHER

7     THINGS.  IT MADE THE POINT THAT THIS IS A FORFEITURE ACTION

8     WHICH HAS TWO CONSEQUENCES FOR THE ANALYSIS.

9          ONE IS THAT THE COST OF THE EXCLUSIONARY RULE --

10    BECAUSE THAT'S THE DISCUSSION, REALLY -- THE EVIDENCE IN

11    QUESTION THERE AND HERE IS RELEVANT AND RELIABLE EVIDENCE IN

12    THE COMMISSION OF A FEDERAL OFFENSE.

13         THE QUESTION IS WHETHER IT SHOULD BE EXCLUDED AS A

14    DETERRENT; AND THE COURT, THE CIRCUIT, IN $187,000 MADE THE

15    POINT THAT THE COST OF EXCLUSION IN THAT FORFEITURE CASE IS

16    LESS.  THIS IS PAGE 950.

17         THE COURT:  BUT, MR. WOLFE, I THINK WE'RE --

18         MR. WOLFE:  YES.

19         THE COURT:  -- SORT OF GOING DOWN THE WRONG ROAD

20    HERE BECAUSE I DIDN'T SAY ANYTHING ABOUT EXCLUSION YET.  SO

21    WE'RE NOT HERE REALLY DISCUSSING WHAT ARE THE PURPOSES OF

22    EXCLUSION WHEN THERE'S NO DETERMINATION THAT THERE'S

23    EXCLUSION.

24         WE'RE AT THE PRELIMINARY STAGE OF DISCUSSING WHAT

25    IS THE LAW THAT WE WOULD LOOK TO THAT SAYS NOTHING ABOUT ANY

```
 1    CONCLUSION THAT I MAY MAKE ABOUT WHETHER OR NOT THERE'S

 2    PROBABLE CAUSE EVEN UNDER WHATEVER RULE THAT I MAY APPLY.

 3              SO, YOU KNOW, I THINK IT'S PREMATURE TO TALK ABOUT

 4    EXCLUSION AND THE COSTS ASSOCIATED WITH EXCLUSION BECAUSE

 5    WE'RE NOT THERE YET.

 6              MR. WOLFE:  YOUR HONOR, I'M NOT SUGGESTING THAT --

 7    I'M TRYING NOT TO TALK ABOUT THAT.

 8              WHAT I'M TRYING TO IDENTIFY OR FOCUS YOUR HONOR'S

 9    ATTENTION ON IS WHY I BELIEVE THE $187,000 CASE IS THE

10    OUTLIER IN THE ANALYSIS.

11              IT'S NOT IN LINE WITH CHAVEZ-VERNAZA.  IT IS AN

12    UNUSUAL CASE, UNIQUE IN ITS FACTS, AS THE CIRCUIT SAID,

13    BECAUSE IT'S IN FORFEITURE WHERE THERE'S A FRANKS VIOLATION

14    WHERE THE COST OF EXCLUSION IS LESS THAN IN A CRIMINAL CASE

15    CERTAINLY TO THE FEDERAL GOVERNMENT AND, MOREOVER, WHERE THE

16    OFFENDER, THE AGENCY THAT COMMITTED THE FRANKS VIOLATION IS

17    VERY LIKELY -- IN THE WORDS OF THE CIRCUIT (AS READ:)

18         "WE RECOGNIZE THE DISTINCT AND DISTURBING POSSIBILITY

19          THAT THE L.A.P.D. COULD PROFIT FROM ITS OWN ILLEGAL

20          ACTIVITY WERE THE GOVERNMENT TO PREVAIL."

21              THE COURT:  WELL, LET'S PUT ASIDE THE 186,000

22    BECAUSE I THINK WE'RE SORT OF STEERING THIS CONVERSATION

23    PERHAPS A LITTLE BIT OFF CENTER BECAUSE, REGARDLESS OF

24    186,000, EVEN THESE CASES THAT YOU RELY ON --

25              CHAVEZ AND CORMIER.  I DON'T KNOW IF YOU RELY ON
```

1      BRADY OR WHETHER I FOUND THAT CASE.

2             BUT BE THAT AS IT MAY, THOSE CASES ALL DO NOT

3      INVOLVE A SITUATION WHERE THE ELEMENTS OF A STATE CRIME ARE

4      NECESSARILY TIED TO THE DETERMINATION OF PROBABLE CAUSE AS

5      IT IS HERE.

6             NOW, YOU SAY YOU DISAGREE THAT THIS IS SIMILAR TO

7      THE SECOND EXCEPTION NOTED BY CORMIER.  WELL, IT IS TRUE IN

8      A SENSE THAT OUR CASE IS NOT A SEARCH INCIDENT TO ARREST.

9      SO TO THAT EXTENT, IT IS A DISTINCTION.  I AGREE.

10            BUT THAT'S NOT A MATERIAL DISTINCTION, IT SEEMS TO

11     ME, BECAUSE OUR CASE, IF ANYTHING, HAS A TIGHTER CONNECTION

12     TO THE UNDERLYING STATE CRIMINAL OFFENSE BECAUSE THE

13     PROBABLE CAUSE HAS TO BE BASED UPON THAT VIOLATION.

14            AND SO FROM A CONCEPTUAL STANDPOINT, THERE'S

15     REALLY NO DIFFERENCE BETWEEN A SEARCH INCIDENT TO ARREST --

16     WELL, THE SEARCH CAN'T BE GOOD UNLESS THE ARREST WAS GOOD;

17     AND THE ARREST CAN'T BE GOOD UNLESS THE ARREST IS PROBABLE

18     CAUSE.  AND PROBABLE CAUSE IS NOT IN A VACUUM, BUT PROBABLE

19     CAUSE IS BASED UPON WHAT'S THE VIOLATION.

20            WE HAVE THE SAME THING HERE.  WE JUST DON'T HAVE

21     THAT ADDITIONAL LINK OF SEARCH INCIDENT TO AN ARREST.

22     THAT'S NOT OUR ISSUE.

23            BUT WE ARE LOOKING AT PROBABLE CAUSE, AND PROBABLE

24     CAUSE HAS TO BE TIED TO PROBABLE CAUSE OF WHAT?  PROBABLE

25     CAUSE OF WHETHER OR NOT THERE WAS A VIOLATION OF THE

1    CULTIVATION LAWS OF THE STATE OF CALIFORNIA.

2           MR. WOLFE:  YOUR HONOR HAS COME RIGHT DOWN TO WHAT

3    THE DISAGREEMENT IS.

4           I SIMPLY DO NOT BELIEVE THAT THE NINTH CIRCUIT LAW

5    TAKES ACCOUNT OF THE ELEMENTS OF THE STATE'S OFFENSES IN

6    DECIDING PROBABLE CAUSE, AND I SAY THAT BECAUSE OF

7    CHAVEZ-VERNAZA, ITS REFERENCE TO THE PRIOR NINTH CIRCUIT

8    CASES, AND THE SUBSEQUENT ONES THAT YOUR HONOR POINTED OUT

9    BECAUSE, IF THAT'S THE CASE, THEN THERE WILL BE VALID

10   FEDERAL LAWS THAT CANNOT BE ENFORCED USING EVIDENCE FOUND BY

11   STATE OFFICERS.

12          THE COURT:  BECAUSE THAT'S A FEDERAL VIOLATION

13   RIGHT THERE.  THE FEDERAL VIOLATION -- BECAUSE THE FOURTH

14   AMENDMENT PROBABLE CAUSE STANDARD APPLIES TO THE STATE, NO

15   DOUBT ABOUT THAT, THROUGH THE 14TH AMENDMENT.

16          SO NOW, WHEN THERE IS A VIOLATION, IF THE

17   VIOLATION IS PREDICATED UPON A STATE LAW CRIME, THEN IF

18   THERE'S NO PROBABLE CAUSE TO ARREST OR TO SEARCH BASED UPON

19   THAT, THAT FEDERAL VIOLATION ALREADY OCCURRED.

20          THAT'S NOT A STATE LAW VIOLATION ANYMORE.  THAT IS

21   A FEDERAL VIOLATION OF THE FEDERAL CONSTITUTION AND

22   THERE'S -- NOTHING IN CHAVEZ, NOTHING IN BRADY, NOTHING IN

23   CORMIER IS OF THAT KIND BECAUSE THOSE VIOLATIONS OF STATE

24   LAW THAT WOULDN'T MAKE ANY DIFFERENCE THAT WOULD STILL BE

25   FINE TO USE IN THE FEDERAL PROSECUTION DO NOT LINK

DECEMBER 15, 2010

```
 1    THEMSELVES TO AN ANALYSIS OF THE ELEMENTS OF PROBABLE CAUSE.

 2              BECAUSE IF YOU LOOK AT CHAVEZ, CHAVEZ IS NOT A

 3    PROBABLE CAUSE TO DETERMINE WHETHER OR NOT THERE'S ANY RIGHT

 4    TO ARREST HIM UNDER STATE LAW.  CHAVEZ INVOLVES STATE

 5    OFFICERS GOING AND GETTING SOME FINANCIAL DOCUMENTS --

 6    EXACTLY HOW THEY GOT IT, IT WASN'T EVEN CLEAR, BUT THEY'RE

 7    GETTING THE FINANCIAL DOCUMENTS.

 8              LET'S SAY THAT WAS A VIOLATION, THEY GOT IT IN

 9    VIOLATION OF STATE LAW.  THAT FACT IS NOT LINKED, TIGHTLY OR

10    OTHERWISE, TO THE UNDERLYING VIOLATION.

11              SO IT DOESN'T MAKE ANY DIFFERENCE.  THERE IS NO

12    VIOLATION THERE OF A CONSTITUTIONAL MANNER, FEDERAL

13    CONSTITUTIONAL MANNER.

14              SAME THING WITH RESPECT TO THE CONSENT TO SEARCH.

15    OKAY.  WASHINGTON -- I THINK IT'S WASHINGTON.  MAYBE IT'S

16    OREGON, I FORGOT.  I THINK IT'S WASHINGTON HAS A RULE THAT

17    CONSENT CANNOT BE PROPER UNLESS THE OFFICER SAID, "YOU DON'T

18    HAVE TO CONSENT."

19              THAT'S NOT A FEDERAL CONSTITUTIONAL RULE.  THERE

20    IS NO LINK TO A PARTICULAR STATE LAW ON WHICH PROBABLE CAUSE

21    IS BASED.  IT'S COLLATERAL TO IT, AND THAT'S NOT A FEDERAL

22    RULE.  SO WE DON'T ENFORCE IT.

23              BUT WHEN WHAT DEFINES PROBABLE CAUSE IS BASED UPON

24    A STATE VIOLATION AND IF IT'S ABSENT UNDER THAT ANALYSIS,

25    THAT ITSELF IS A FEDERAL CONSTITUTIONAL VIOLATION.  AND SO
```

```
 1   WE DO ENFORCE THAT.
 2            AND I DON'T THINK ANY OF THESE CASES SUGGEST THE
 3   CONTRARY; IF ANYTHING, I THINK IT SUPPORTS IT.  BUT, YOU
 4   KNOW, I THINK MAYBE WE'RE GOING AROUND AND AROUND A LITTLE
 5   BIT.  I APPRECIATE YOUR VIEW.  AS YOU CAN SEE, I'M NOT SOLD
 6   ON IT.
 7            BUT IF YOU WANT TO CONCLUDE BY WHATEVER IT IS YOU
 8   WANT TO WRAP UP WITH, I'LL BE GLAD TO ENTERTAIN IT.
 9   OTHERWISE, I THINK WE'RE GOING TO MOVE ON.
10            MR. WOLFE:  I UNDERSTAND EXACTLY WHAT YOUR HONOR
11   IS SAYING, AND I DO SIMPLY DISAGREE.
12            I BELIEVE THE CHAVEZ-VERNAZA RULE WOULD NOT
13   MEASURE PROBABLE CAUSE IN A FEDERAL CRIMINAL CASE BY THE
14   ELEMENTS OF THE STATE STATUTE BECAUSE THE VICE OF DOING SO
15   IS THAT RELEVANT AND RELIABLE EVIDENCE WILL NOT BE ADMITTED
16   IN A FEDERAL CASE FOR WHICH THERE IS PROBABLE CAUSE.
17            AND I THINK THAT'S EXACTLY THE POINT THAT THEY
18   MAKE.
19            WE AGREE WITH THE SECOND AND THIRD CIRCUITS THAT
20   REQUIRING FEDERAL DISTRICT COURTS TO LOOK TO STATE LAW WHEN
21   DETERMINING THE ADMISSIBILITY OF EVIDENCE OBTAINED IN
22   ACCORDANCE WITH FEDERAL LAW WOULD HAMPER THE ENFORCEMENT OF
23   VALID FEDERAL LAWS AND UNDERMINE THE POLICY FAVORING
24   UNIFORMITY OF FEDERAL EVIDENTIARY STANDARDS.
25            THE EFFECT WILL BE THIS SEARCH IS VALID IN THE 36
```

```
1    STATES WHERE THERE'S NO MEDICAL -- THAT IS, UNDER THE
2    DEFENDANT'S ARGUMENT -- THE SEARCH IS VALID IN THE 36 STATES
3    WHERE THERE'S NO MEDICAL MARIJUANA RULE AND INVALID IN THE
4    14 WHERE THERE IS.  IT WILL EVEN VARY WITHIN THE CIRCUIT.
5    SO THERE'S A DIFFERENT RULE IN THE NINTH CIRCUIT FOR
6    CALIFORNIA AND THE OTHER STATES.
7              THE COURT:  OKAY.  I THINK I'VE HEARD SUFFICIENTLY
8    FROM YOU ON THAT.  I APPRECIATE YOUR ARGUMENT.
9              MR. REED, DO YOU WANT TO BE HEARD ON THIS ISSUE?
10             MR. REED:  NO, YOUR HONOR.  WE AGREE WITH THE
11   COURT.
12             THE COURT:  OKAY.  THE NEXT ISSUE WHICH I WILL
13   WANT TO ADDRESS WITH YOU, MR. REED, IS WITH REDACTION, WHICH
14   I AM LIKELY TO CONCLUDE THAT THERE CAN BE UNDER CIRCUIT LAW,
15   AND UNDERSTANDING THAT THE PROBABLE CAUSE DETERMINATION
16   WITHOUT, LET'S SAY, THE OBSERVATIONS MADE POST-ENTRY.
17             SO, AS REDACTED, WHATEVER IS LEFT OVER AFTER
18   REDACTION WHETHER OR NOT THERE IS PROBABLE CAUSE, AND I'LL
19   HEAR FROM YOU ON THAT.
20             MR. REED:  WELL, THERE CERTAINLY WOULDN'T BE
21   PROBABLE CAUSE, YOUR HONOR, BECAUSE EVERYTHING THAT WAS SEEN
22   WAS CONSISTENT WITH LAWFUL ACTIVITY, LAWFUL MARIJUANA
23   ACTIVITY UNDER PROP 215, UNDER THE HEALTH AND SAFETY CODE
24   11362, WHICH WE'VE ATTACHED TO OUR BRIEFING.
25             THE GUIDELINES BY THE ATTORNEY GENERAL SET FORTH
```

DECEMBER 15, 2010

```
 1   VERY SPECIFICALLY THAT PEOPLE CAN ACT IN COLLECTIVES AND
 2   GROW MARIJUANA.  AND THEREFORE, ALL THE ACTIVITY THAT WAS
 3   SEEN BY THE OFFICERS PRIOR TO ENTRY IS COMPLETELY CONSISTENT
 4   WITH LAWFUL ACTIVITY.
 5            LET'S TALK ABOUT THE PROBABLE CAUSE IN DETAIL AND
 6   SEE WHETHER OR NOT IT WAS ALL CONSISTENT WITH LAWFUL
 7   ACTIVITY.
 8            OF COURSE, WE HAVE AN INFORMANT IN THE CASE, AS
 9   THE COURT KNOWS.  AND THE INFORMANT INDICATED THAT HE SAW
10   SEVERAL PLANTS INSIDE THE WAREHOUSE.  "SEVERAL PLANTS" COULD
11   MEAN FOUR OR FIVE, SIX, OR SEVEN.  IT DOESN'T TELL US
12   EXACTLY HOW MANY PLANTS WERE INVOLVED.
13            THE OFFICER GOES TO THE FACILITY, THE UNIT, BY
14   HIMSELF.  HE SETS UP SURVEILLANCE.  HE'S BY HIMSELF.  HE
15   SEES A CAR WHICH MATCHES THE ANONYMOUS TIP THAT WAS GIVEN.
16   HE SEES A BLACK MERCEDES PARKED NEAR UNIT D.
17            NOTHING INCONSISTENT THERE.  NOTHING TELLING US
18   THAT THERE'S A VIOLATION OF SOME STATE CRIMINAL LAW AT THAT
19   POINT.
20            HE SEES ANOTHER PERSON ARRIVE, MR. GAMBARYAN,
21   ARRIVING IN A SILVER HONDA ACCORD.  NOTHING WRONG WITH
22   SOMEBODY ARRIVING AT A UNIT IN A CAR, IN A HONDA.
23            NOW, HERE, AT THIS POINT, HE SEES JACK GAMBARYAN
24   AND GRIGOR GARIBYAN REMOVE A PROPANE TANK AND A BAG
25   CONTAINING BAMBOO STALKS FROM THE HONDA, AND THEY CARRY THEM
```

```
 1    INTO UNIT D.

 2              NOTHING ILLEGAL ABOUT THAT BECAUSE THAT IS

 3    CONSISTENT WITH LAWFUL COLLECTIVE MARIJUANA CULTIVATION

 4    UNDER PROP 215.

 5              THEY SEE MR. IGARIAN ARRIVE IN AN AUDI.  HE MEETS

 6    MR. GAMBARYAN.  NOW, HERE IS SOMETHING THAT MIGHT BE AN

 7    ISSUE IN THIS CASE, YOUR HONOR.  AND I'M SURE THE COURT

 8    STUDIED IT IN DETAIL.

 9              BUT WHAT OCCURS AT THIS POINT IS THAT OFFICER

10    COYLE SAYS BOTH IN HIS POLICE REPORT AND IN THE DECLARATION

11    IN SUPPORT OF THE SEARCH WARRANT THAT, WHEN THAT AUDI

12    ARRIVED, HE SAW GAMBARYAN COME OUT FROM THE DOOR AND PLACE A

13    BLACK PLASTIC BAG WITH SOME KIND OF UNKNOWN OBJECT INTO

14    IGARIAN'S CAR.

15              NOW, THE COURT WILL NOTE THAT, WHEN IT READ THE

16    GOVERNMENT'S RESPONSE TO OUR BRIEF, IN THAT DECLARATION THAT

17    WAS ATTACHED TO THAT OPPOSITION, DETECTIVE COYLE'S

18    DECLARATION STATED SOMETHING DIFFERENT; AND WE'RE HOPING

19    THAT THE COURT DOESN'T RELY ON THAT SOMETHING DIFFERENT IN

20    MAKING ITS PROBABLE CAUSE ANALYSIS BECAUSE WHAT HE SAID IN

21    HIS DECLARATION WAS (AS READ:)

22         "EVEN IF CIRCUMSTANCES HAD DICTATED THAT WE SHOULD NOT

23          OR COULD NOT ENTER UNIT D, I WOULD HAVE SOUGHT A SEARCH

24          WARRANT FOR UNIT D IN VIEW OF THE PROBABLE CAUSE TO

25          BELIEVE THAT EVIDENCE OF AN INDOOR MARIJUANA GROW WAS
```

1              *IN THE UNIT, PARTICULARLY SINCE THE BLACK BAG OF*

2          *MARIJUANA PLANTS HAD JUST BEEN TAKEN OUT OF UNIT D."*

3              BUT HE NEVER SAW ANY BLACK BAG OF MARIJUANA PLANTS

4      TAKEN OUT OF UNIT D.  HE ONLY SAW THEM AT A LATER TIME AFTER

5      THE SEARCH WARRANT WAS SERVED.

6              THE COURT:  WHAT YOU MEAN IS THAT HE SAW A BLACK

7      BAG BEING TAKEN OUT OF THE UNIT.  HE DIDN'T KNOW THE BLACK

8      BAG CONTAINED MARIJUANA.  THAT'S WHAT YOU'RE SAYING.

9              MR. REED:  EXACTLY WHAT I'M SAYING.

10              THE COURT:  OKAY.

11              SO WHAT YOU'RE SAYING IS THAT YOU BELIEVE THAT I

12      SHOULD NOT CONSIDER AS PART OF PROBABLE CAUSE THE CONTENT OF

13      THE BLACK PLASTIC BAG.

14              MR. REED:  EXACTLY RIGHT, YOUR HONOR.

15              THE COURT:  OKAY.

16              MR. REED:  AND THAT'S CONFIRMED.  HIS OBSERVATIONS

17      ARE CONFIRMED IN HIS POLICE REPORT.  HE SAYS THAT HE DIDN'T

18      REALIZE --

19              THE COURT:  I UNDERSTAND.  I UNDERSTAND.

20              MR. REED:  SO MOVING ON, WE HAVE THIS BLACK

21      MYSTERIOUS BAG BEING TAKEN OUT FROM THE DOOR AND PLACED INTO

22      A CAR.  NOTHING ILLEGAL ABOUT THAT.

23              DETECTIVE COYLE APPROACHED IGARIAN TO SPEAK WITH

24      HIM, AND HE SMELLED THE ODOR OF MARIJUANA EMANATING FROM

25      MR. IGARIAN -- PERFECTLY CONSISTENT WITH SOMEBODY OPERATING

DECEMBER 15, 2010

```
 1    A LAWFUL CULTIVATION COLLECTIVE UNDER CALIFORNIA LAW.

 2    NOTHING ILLEGAL ABOUT THAT.

 3          HE ASKED WHAT TYPE OF BUSINESS THIS WAS OF

 4    MR. IGARIAN.  NOW, MR. IGARIAN BECOMES NERVOUS AT THAT

 5    POINT.  HERE WE HAVE AN INDIVIDUAL WHO IS FROM A DIFFERENT

 6    COUNTRY; HE'S NERVOUS; HE'S IN THE PRESENCE OF A POLICE

 7    OFFICER.

 8          WE CITED SOME CASES IN OUR BRIEF THAT, BECAUSE A

 9    PERSON IS NERVOUS IN FRONT OF A POLICE OFFICER OR DOESN'T

10    ANSWER THE POLICE OFFICER'S DIRECT QUESTIONS, THAT DOESN'T

11    PROVIDE SUFFICIENT PROBABLE CAUSE IN THE PROBABLE CAUSE

12    ANALYSIS, BUT THAT'S WHAT OCCURRED.

13          AND SO WE'RE ASSERTING TO THE COURT THAT THAT'S

14    NOT MUCH OF SOME KIND OF NEW FACT WHICH DEVELOPS PROBABLE

15    CAUSE IN ORDER TO SUSPECT A CRIME.

16          A PERSON FROM ANOTHER COUNTRY PROBABLY CAN'T SPEAK

17    ENGLISH VERY WELL, BEING NERVOUS IN THE PRESENCE OF A POLICE

18    OFFICER AND NOT ANSWERING THE DETECTIVE'S --

19          THE COURT:  ARE YOU JUST GUESSING THAT HE CAN'T

20    SPEAK ENGLISH VERY WELL?

21          MR. REED:  NO, HE CAN, YOUR HONOR, BUT HE'S NOT --

22          THE COURT:  BECAUSE OTHERWISE, I WAS GOING TO ASK

23    WHETHER OR NOT MR. STANLEY WOULD NEED AN INTERPRETER FOR

24    HIM.  NOBODY IS SUGGESTING --

25          DOES HE NEED AN INTERPRETER, MR. STANLEY?
```

DECEMBER 15, 2010

```
1              MR. STANLEY:  YOUR HONOR, YOU'RE NOT REFERRING TO

2    MY CLIENT.

3              THE COURT:  OKAY.  I'M SORRY.

4              MS. BAGHDAIAN:  WE HAVE NOT JOINED IN ON THAT

5    MOTION.  YOU ARE ACTUALLY REFERRING TO MY CLIENT.

6              THE COURT:  BUT HE DOESN'T NEED AN INTERPRETER

7    ANYWAY, DOES HE?

8              MS. BAGHDAIAN:  NO, HE DOESN'T.

9              MR. REED:  AND HE'S NERVOUS.  SO NOW GAMBARYAN IS

10   OUTSIDE AS WELL.

11             NOW, DETECTIVE MCKINNEY, HIS PARTNER, BY THAT

12   TIME, HAS APPROACHED.  AND THERE'S NO SUSPICIOUS ACTIVITY

13   THAT'S GOING ON TO THIS POINT -- NO GUNS ARE SEEN, NO KINDS

14   OF GANG COLORS.  JUST PEOPLE COMING AND GOING, DRESSED -- I

15   TAKE IT -- NATURALLY.  NOTHING TO KEY THE SENSES OF AN

16   INVESTIGATING OFFICER THAT SOME KIND OF ILLEGAL ACTIVITY OR

17   GANG ACTIVITY OR ANYTHING IS TAKING PLACE THAT'S ILLEGAL.

18             MCKINNEY APPROACHES GAMBARYAN -- THE PARTNER OF

19   DETECTIVE COYLE -- AND HE ASKED TO SPEAK TO HIM.  AND HE

20   SMELLS THE ODOR OF MARIJUANA COMING OFF OF GAMBARYAN,

21   MCKINNEY DOES.  NOTHING ILLEGAL ABOUT THAT.  THAT'S

22   CONSISTENT WITH LAWFUL CULTIVATION UNDER CALIFORNIA STATE

23   LAW.  AT THAT POINT, THAT'S WHEN THE OFFICERS KNOCK ON THE

24   DOOR, AND THEY GO INSIDE.

25             SO THAT'S THE PROBABLE CAUSE THAT WE HAVE.
```

DECEMBER 15, 2010

1          THE COURT:  BEFORE THEY WENT INSIDE, THEY ALSO

2    SMELLED MARIJUANA EMANATING FROM THE DOOR.

3          MR. REED:  AFTER THEY OPENED IT.

4          THE COURT:  THAT'S NOT WHAT IT SAYS.  WHERE DOES

5    IT SAY THAT?

6          MR. REED:  (AS READ:)

7      *"HE KNOCKED ON THE DOOR OF UNIT D.  THERE WAS NO*

8       *ANSWER.  OFFICER GODOY AND TWO OFFICERS SMELLED THE*

9       *ODOR OF MARIJUANA EMANATING FROM THE LOCATION."*

10         IT'S KIND OF UNCLEAR AS TO WHETHER THE DOOR WAS

11   OPEN, YOUR HONOR, OR NOT, AT THAT POINT.

12         THE COURT:  WELL, IT CERTAINLY DOESN'T SAY "I

13   OPENED THE DOOR AND THEN SMELLED IT."

14         MR. REED:  YOU'RE CORRECT, YOUR HONOR.

15         BUT IN ANY CASE, THERE'S NOTHING WRONG TO SPARK OR

16   TRIGGER A POLICE OFFICER'S SUSPICION THAT THERE IS AN

17   UNLAWFUL MARIJUANA GROW BECAUSE THE SMELL COMING FROM INSIDE

18   A UNIT IS CONSISTENT WITH LAWFUL CULTIVATION, AS I SAY,

19   UNDER THE MARIJUANA ACT THAT WAS ENACTED BY THE STATE OF

20   CALIFORNIA.

21         THE COURT:  ACTUALLY, IF YOU READ THE SEARCH

22   WARRANT AFFIDAVIT, IT SAYS THAT (READING:)

23     *"WHILE AT THE DOOR, THEY DETECTED A STRONG ODOR OF*

24      *MARIJUANA EMITTING FROM THE LOCATION.  BASED ON THE*

25      *INFORMATION AND OBSERVATION, AN OPINION WAS FORMED THAT*

                    DECEMBER 15, 2010

1      *MARIJUANA WAS BEING CULTIVATED INSIDE."*

2           NEXT PARAGRAPH:

3      *"OFFICER GODOY CONDUCTED A KNOCK ON THE DOOR."*

4           SO I THINK, FAIRLY READ, THIS MEANS THAT THEY

5  SMELLED THE ODOR, AND THEN THEY KNOCKED ON THE DOOR, AND

6  THEN NOBODY ANSWERED, AND THEN THEY OPENED IT.

7           MR. REED:  YES, YOUR HONOR.

8           THE COURT:  OKAY.

9           MR. REED:  SO THAT'S WHAT WE HAVE.  THEY OPEN THE

10  DOOR, AND THEY GO IN.

11           THE COURT:  RIGHT.

12           MR. REED:  THAT'S ALL THE PROBABLE CAUSE THAT THEY

13  HAVE.  THIS IS CONSISTENT WITH A LAWFUL CULTIVATION.  THERE

14  IS NO PROBABLE CAUSE TO SUSPECT THAT A CRIME IS OCCURRING.

15  THERE'S NO INVESTIGATION OF --

16           THE COURT:  JUST A MINUTE.

17           WHY IS THAT CONSISTENT WITH LAWFUL CULTIVATION?

18  NOT ANYBODY -- EVEN UNDER THE C.U.A. AND M.M.P.A., NOT JUST

19  ANYBODY CAN CULTIVATE.  YOU HAVE TO HAVE -- AND YOU GIVE ME

20  THE ATTORNEY GENERAL'S GUIDELINES AND SO FORTH.

21           YOU HAVE TO HAVE GONE THROUGH SOME HOOPS IN ORDER

22  TO BE ABLE TO COME TOGETHER AS A COLLECTIVE; YOU HAVE TO

23  HAVE SOME QUALIFICATIONS; YOU HAVE TO ENSURE THAT THERE IS

24  QUALIFICATION FOR THE COLLECTIVE BEFORE YOU CAN CULTIVATE.

25           YOU MAKE IT SOUND LIKE UNDER CALIFORNIA LAW, YOU

DECEMBER 15, 2010

```
 1    AND I COULD JUST GO OUT THERE AND SAY "LET'S GO AHEAD AND
 2    CULTIVATE SOME MARIJUANA."  WE CAN'T DO THAT.
 3            MR. REED:  WELL, YOUR HONOR, WE'RE TALKING ABOUT A
 4    PROSPECTIVE ANALYSIS, NOT A HINDSIGHT ANALYSIS.
 5            THE COURT:  I'M TALKING ABOUT AT THE TIME.  WHAT
 6    EVIDENCE DID THEY HAVE?
 7            NOW YOU -- AND YOU'RE DOING A VERY GOOD JOB,
 8    MR. REED, IN TERMS OF DISSECTING ALL OF THESE FACTORS FOR
 9    PROBABLE CAUSE.  OKAY.  THAT'S VERY EFFECTIVE IF THAT'S WHAT
10    YOU WANT TO DO, BUT IT'S TOTALLY INEFFECTIVE, AS FAR AS I'M
11    CONCERNED, WHEN WE'RE TALKING ABOUT THE TOTALITY OF THE
12    CIRCUMSTANCES.
13            SURE, ONE THING COULD BE TOTALLY INCONSISTENT WITH
14    INNOCENCE, AND ANOTHER THING MAY BE CONSISTENT WITH
15    INNOCENCE.  THAT'S NOT IN THE NATURE OF A PROBABLE CAUSE
16    ANALYSIS AS I SUSPECT THAT YOU WELL KNOW.
17            A PROBABLE CAUSE ANALYSIS IS A TOTALITY OF THE
18    CIRCUMSTANCES WHERE A REASONABLE PERSON WOULD VIEW ALL
19    CIRCUMSTANCES WITHOUT COMPARTMENTALIZING ONE AND THEN THE
20    OTHER AND THEN THE OTHER.
21            SURE, IF YOU COMPARTMENTALIZE ANY ONE THING OR TWO
22    THINGS OR THREE THINGS, IT COULD BE EXPLAINED AWAY; BUT
23    THAT'S INCONSISTENT WITH LOGIC AND COMMON SENSE IF OUR IDEA
24    IS AND THE RULE IS AND THE LAW IS THAT WE HAVE TO LOOK AT IT
25    UNDER THE TOTALITY OF THE CIRCUMSTANCES.
```

DECEMBER 15, 2010

1           THE TOTALITY OF THE CIRCUMSTANCES HERE SHOWS, IT

2    SEEMS TO ME, THAT YOU HAVE THE TIP, WHICH IN AND OF ITSELF,

3    YOU'RE RIGHT, IT'S NOT GOING TO AMOUNT TO A WHOLE LOT, AND

4    CERTAINLY IT'S NOT GOING TO AMOUNT TO PROBABLE CAUSE.

5    YOU'RE RIGHT ABOUT THAT.

6           BUT THE TIP WAS PARTIALLY CORROBORATED, NOT ONLY

7    WITH THE EXISTING CAR THERE, BUT THE SOMEWHAT PREDICTIVE

8    NATURE OF THE ARRIVAL OF THE SECOND CAR.

9           YOU'VE GOT THE BLACKED OUT WINDOWS, WHICH IS

10   CONSISTENT WITH THE EXPERIENCE OF THE OFFICER IN TERMS OF

11   HIS EXPERIENCE AND THE INDOOR MARIJUANA GROW, THE PROPANE

12   TANK, THE BAMBOO STALKS.

13          THOSE ARE ALSO CORROBORATIVE OF THE TIP AND

14   CONSISTENT WITH HIS EXPERIENCE AS A SEASONED INVESTIGATOR

15   THAT THESE ARE FOR MARIJUANA GROW.

16          THEN YOU HAVE IGARIAN, WHO IS THERE AND -- VERY

17   MUCH UNLIKE $186,000 WHEN OFFICER LOPEZ WENT THERE, MR. FEIL

18   AND ALL OF THE OTHER PEOPLE WENT AND SAID WHOA, WAIT A

19   SECOND.  EVERYTHING IS FINE.  WE'RE A COLLECTIVE.  YOU SEE?

20   LOOK, WE INCORPORATED AS A COLLECTIVE; WE GOT ALL THESE

21   DOCUMENTS.  YOU KNOW, HANG AROUND.  LOOK, THIS IS WHAT

22   HAPPENS.  WE'VE GOT NOTHING TO HIDE.

23          ON THE OTHER HAND, MR. IGARIAN'S BEHAVIOR IS

24   HIGHLY SUSPICIOUS WHERE, YOU KNOW, HE DOESN'T SAY, WELL,

25   YEAH, I HAVE A COLLECTIVE GOING ON HERE.  YOU KNOW, SURE

```
 1    WE'RE GROWING, BUT WE'RE GROWING AS A COLLECTIVE, AND IT'S

 2    ALL MEDICAL MARIJUANA, AND WE ONLY GIVE IT TO QUALIFIED

 3    PATIENTS OR PEOPLE WITH I.D. CARDS -- YOU KNOW, ALL OF THIS.

 4    THERE'S NOTHING LIKE THAT.

 5              INSTEAD, HE MAKES STATEMENTS, WHICH HE DIDN'T HAVE

 6    TO MAKE, BUT HE DID MAKE STATEMENTS WHICH WERE OBVIOUSLY

 7    UNTRUE.

 8              HE WAS IN THERE FOR 15 MINUTES.  HE ASKED HIM

 9    "WHAT'S GOING ON IN THERE?" AND HE SAID, "GEE, I DON'T KNOW

10    WHAT'S GOING ON IN THERE."

11              "WHAT DID YOU BRING INTO THE -- "

12              "I DON'T KNOW WHAT WAS IN THAT BAG."

13              AND THEN HE WAS OVERTLY NERVOUS AND EVASIVE, AND

14    THEN YOU HAVE THE SMELL OF MARIJUANA.

15              THERE'S NOTHING HERE TO INDICATE THAT THERE'S ANY

16    KIND OF A COLLECTIVE.  NOTHING.  ZERO.  THERE'S NO

17    INDICATION THAT THEY HAVE GONE THROUGH ALL THE

18    REQUIREMENTS -- AND THERE ARE PLENTY -- IN TERMS OF BEING A

19    LAWFUL COLLECTIVE.

20              AND THE ONLY THING YOU MIGHT SAY, WHICH YOU

21    HAVEN'T, BUT I SUSPECT YOU PROBABLY WOULD SAY IS WHAT YOU

22    DID IN YOUR PAPERS -- AND IT'S FAIR ENOUGH -- IS THAT

23    SUPPOSEDLY EACH OF THE THREE MOVANTS HAD SOME KIND OF A

24    DOCTOR'S RECOMMENDATION.

25              OKAY.  NOT CLEAR WHETHER OR NOT THE OFFICER KNEW
```

```
 1    ABOUT IT.  BUT JUST FOR PURPOSES OF THESE DISCUSSIONS, SO

 2    THAT THERE IS NO MATERIAL DISPUTE OF FACT, LET'S ASSUME THAT

 3    THEY WERE AWARE THAT THERE WERE SOME MEDICAL DOCTOR'S

 4    RECOMMENDATION OR SOME DOCTOR'S RECOMMENDATION.

 5            IN AND OF ITSELF, IN THE TOTALITY OF THE

 6    CIRCUMSTANCES, IS THAT ENOUGH TO SAY PROBABLE CAUSE DOES NOT

 7    EXIST BECAUSE THEY CANNOT SAY THAT THIS WAS A ILLEGAL

 8    MARIJUANA CULTIVATION?

 9            REMEMBER, THE C.U.A. AND THE M.M.P.A. RELATES ONLY

10    TO CREATE AN AFFIRMATIVE DEFENSE.  THEY DO NOT WORK A

11    FUNDAMENTAL CHANGE IN CALIFORNIA LAW WHICH SAYS EVERYTHING

12    IS LEGAL TO CULTIVATE, AND IT'S ONLY THE EXCEPTION THAT IT'S

13    ILLEGAL NOW.

14            IT'S NOT THAT.  IT'S STILL ILLEGAL TO CULTIVATE

15    MARIJUANA EXCEPT IN THE CARVE-OUT SITUATION WHERE YOU ARE A

16    LAWFUL COLLECTIVE ONCE YOU HAVE MET ALL THE REQUIREMENTS OF

17    IT.  THAT'S AN AFFIRMATIVE DEFENSE UNDER CALIFORNIA LAW.

18            NOW, IF THEY WERE AWARE OF CERTAIN THINGS, THEN

19    YES, OF COURSE, THEY SHOULD TAKE THAT INTO CONSIDERATION.

20            BUT THE ONLY AWARENESS, ARGUABLY, THAT THEY HAD OF

21    THIS HAVING ANYTHING TO DO WITH A COLLECTIVE WOULD BE

22    POSSIBLY THESE RECOMMENDATIONS BECAUSE TO SAY, EVERY TIME

23    THAT THERE IS A CULTIVATION OPERATION, YOU HAVE TO PRESUME

24    THAT IT IS PURSUANT TO A LAWFUL COLLECTIVE, I THINK IS TO

25    TURN THE LAW ON ITS HEAD BECAUSE THEN THERE WOULDN'T BE AN
```

DECEMBER 15, 2010

```
 1   AFFIRMATIVE DEFENSE.

 2              THAT WOULD JUST BE THE LAW, AND THEN THERE WOULD

 3   BE AN EXCEPTION.  THERE WAS A VIOLATION OF THE LAW, WHEREAS

 4   THIS IS STILL A VIOLATION OF LAW BUT FOR THIS EXCEPTION.

 5              SO, AS YOU CAN TELL, I'M NOT PERSUADED THAT THERE

 6   IS NO PROBABLE CAUSE, GIVEN THE TOTALITY OF THE

 7   CIRCUMSTANCES.

 8              MR. REED:  ANOTHER FACTOR, YOUR HONOR, IN THE

 9   TOTALITY OF THE CIRCUMSTANCE ARGUMENT IS THE FACT THAT THE

10   WHOLE CULTURE, THE WHOLE ENVIRONMENT IN TERMS OF STATE LAW

11   ENFORCEMENT AGENCIES PROCEEDING AGAINST MARIJUANA CRIMES HAS

12   BEEN CHANGED SINCE THE ENACTMENT OF THE M.M.P.A. AND THE

13   C.C.U.  IT'S CHANGED.

14              THE COURT:  YOU MEAN THE C.U.A.

15              MR. REED:  YES, THE C.U.A.

16              THAT'S PART OF THE TOTALITY OF THE CIRCUMSTANCES.

17              THE OFFICERS ARE NOW VERY KNOWLEDGEABLE ABOUT

18   THESE LAWS.  THEY HAVE TO HAVE RECEIVED TRAINING ABOUT THESE

19   NEW LAWS, OBVIOUSLY, IN ORDER TO CARRY OUT THEIR DUTIES.

20   THE ATTORNEY GENERAL, AS THE COURT KNOWS, HAS RELEASED

21   GUIDELINES WITH RESPECT TO THESE POLICE OFFICER

22   INVESTIGATIONS.

23              SO THAT, WHEN THEY GO TO THESE FACILITIES OR

24   APPROACHING A UNIT, IT'S OUR POSITION THAT THEY HAVE A

25   DUTY -- STATE LAW ENFORCEMENT OFFICERS HAVE A DUTY TO MAKE
```

DECEMBER 15, 2010

1    SOME KIND OF INQUIRY TO DETERMINE WHETHER OR NOT THERE IS A

2    LAWFUL CULTIVATION GOING ON OR IF IT'S AN UNLAWFUL

3    CULTIVATION.  AND WHEN THEY HAVE MADE NO ATTEMPT WHATSOEVER

4    TO MAKE THAT DETERMINATION, THAT'S PART OF THE PROBABLE

5    CAUSE ANALYSIS.

6              THAT'S PART OF THE PROBLEM.  THERE'S NO PROBABLE

7    CAUSE BECAUSE THEY HAVEN'T TAKEN ANY STEPS TO NEGATE THE

8    EXISTENCE OF A LAWFUL COLLECTIVE, AND THAT WASN'T DONE IN

9    THIS CASE.  THEY JUST BARGED RIGHT IN AFTER THEY CAME INTO

10   CONTACT --

11             THE COURT:  I DON'T BELIEVE THE LAW IS IT'S THEIR

12   DUTY TO NEGATE AN AFFIRMATIVE DEFENSE.

13             THEY CANNOT IGNORE THAT WHICH IS THERE; YOU'RE

14   RIGHT.  BUT I DON'T KNOW THAT YOU HAVE CITED ME ANY CASE

15   LAW.  IN FACT, THE CASE LAW APPEARS FROM CALIFORNIA TO BE

16   CONTRARY THAT THEY HAVE ANY OBLIGATION TO INVESTIGATE AN

17   AFFIRMATIVE DEFENSE.

18             NOW, I'VE GIVEN THAT POINT, ALSO, SOME THOUGHT

19   BECAUSE YOU TALK ABOUT WELL, THEY SHOULD HAVE INVESTIGATED.

20             MY FIRST REACTION WAS, WELL, IF THEY HAD, THERE'S

21   NOTHING THEY WOULD HAVE FOUND BECAUSE YOU CERTAINLY HAVE

22   PRESENTED NOTHING TO SUGGEST THAT THIS WAS A LAWFUL

23   COLLECTIVE.

24             BUT THEN I THOUGHT ABOUT IT SOME MORE, AND PERHAPS

25   THAT'S NOT REALLY THE PROPER ANALYSIS BECAUSE THAT MAY BE

```
 1   TOO RESULT-ORIENTED IN TERMS OF PROBABLE CAUSE ANALYSIS.

 2              SO THE BEST WAY TO APPROACH IT, PERHAPS, IS TO

 3   SAY, EVEN IF THERE WERE SOME DUTY TO INVESTIGATE, THE

 4   FAILURE TO INVESTIGATE UNDER THE CIRCUMSTANCES, WOULD THAT,

 5   IN ADDITION TO ALL OF THE OTHER FACTS, BE SUFFICIENT TO

 6   VITIATE ANY PROBABLE CAUSE BECAUSE THAT WOULD NOT DEPEND

 7   UPON THE RESULT OF THE INVESTIGATION, OBVIOUSLY.

 8              AND I HAVE CONSIDERED THAT AS WELL, AND MY VIEW

 9   TENTATIVELY IS THAT NO, IT DOESN'T COME CLOSE TO VITIATING

10   PROBABLE CAUSE.

11              BUT BE THAT AS IT MAY, IF YOU HAVE ANYTHING

12   FURTHER TO SAY, FINE, AND I'LL HEAR ANY OTHER COUNSEL WHO

13   WANTS TO SPEAK ON IT AND, OF COURSE, MR. WOLFE SHOULD HAVE

14   AN OPPORTUNITY.

15              MR. REED:  NOTHING FURTHER, YOUR HONOR.

16              BUT I DID WANT TO MAKE A RECORD SO THAT THE RECORD

17   IS COMPLETE, THAT WE DON'T KNOW WHAT THE COURT'S GOING TO DO

18   IN TERMS OF ITS RULING YET.

19              BUT IF THE COURT COMES TO THE CONCLUSION THAT

20   THERE WAS PROBABLE CAUSE AND IT'S GOING TO DENY THE MOTION,

21   WE AT LEAST NEED A RECORD WITH RESPECT TO THE EXIGENCY

22   PRONG, SO THAT, IF THIS CASE DOES GO ON APPEAL -- AND I'M

23   NOT SAYING IT WILL OR WHAT WILL OCCUR -- WE NEED TO SETTLE

24   THAT PARTICULAR ISSUE SO IT'S NOT REMANDED BACK TO THE COURT

25   IN SOME WAY FOR A HEARING ON EXIGENCY.
```

DECEMBER 15, 2010

```
 1              DID THE COURT TAKE A LOOK AT THE EXIGENCY ISSUES

 2     IN THIS CASE AND COME TO THE CONCLUSION THAT THERE REALLY

 3     WAS NO EXIGENCY?

 4              THE COURT:  I DID TAKE A LOOK AT IT, BUT I

 5     CONCLUDE I DON'T -- IF I RULE A CERTAIN WAY, I DON'T NEED

 6     TO; AND I DON'T INTEND TO IF I DON'T NEED TO.  AND IF IT

 7     COMES BACK, IT COMES BACK.  WE'LL SEE.

 8              MR. REED:  VERY WELL, YOUR HONOR.

 9              THE COURT:  ALL RIGHT.  MR. WALSH.

10              MS. BAGHDAIAN:  YOUR HONOR, MAY I BRIEFLY, ON

11     BEHALF OF MR. IGARIAN, INTERJECT?  I KNOW WE'RE NOT --

12              THE COURT:  SURE.

13              MS. BAGHDAIAN:  -- PART OF THE SUPPRESSION MOTION.

14              THANK YOU, YOUR HONOR, GOOD MORNING.

15     MELANIE BAGHDAIAN FOR MR. IGARIAN WHO IS NOT PRESENT.

16              I WAS LISTENING TO YOUR HONOR'S ANALYSIS OF THE

17     PROBABLE CAUSE AND HOW IT RELATES TO MY CLIENT, MR. IGARIAN,

18     AND HIS BEHAVIOR AND HOW HE MAY HAVE REACTED WHEN THE POLICE

19     QUESTIONED HIM ABOUT THE TYPE OF FACILITY THAT IT WAS AND HE

20     APPEARED TO BE NERVOUS.

21              AND YOUR HONOR MADE A DISTINCTION WITH THE OTHER

22     CASE THAT YOUR HONOR CITED WHERE THE INDIVIDUAL DID, IN

23     FACT, SAY THIS IS A COLLECTIVE, THIS IS WHAT WE'RE DOING

24     AND, IN FACT, MR. IGARIAN DIDN'T SAY ANY OF THOSE THINGS.

25     AND YOUR HONOR IS, IN FACT, RIGHT.  HE DIDN'T.
```

```
 1              WHAT I WANTED THE COURT TO KNOW ON BEHALF OF MY

 2    CLIENT AND THE OTHER DEFENDANTS WAS THAT WE HAVE NOT JOINED

 3    THIS SUPPRESSION MOTION, AND THE REASON WE HAVE NOT JOINED

 4    THE SUPPRESSION MOTION IS BECAUSE MY CLIENT DOES NOT, I

 5    BELIEVE, HAVE STANDING TO JOIN.

 6              AND WE HAVE, IN FACT, BROUGHT FORWARD EVIDENCE TO

 7    THE GOVERNMENT THAT THAT WAS, IN FACT, THE FIRST TIME

 8    MR. IGARIAN HAD BEEN TO THAT FACILITY AND HE DID NOT HAVE

 9    A --

10              THE COURT:  BUT THAT'S NEITHER HERE NOR THERE.

11    I'M NOT SURE WHY WE'RE GOING INTO THIS.

12              MS. BAGHDAIAN:  THE ONLY REASON I WANTED TO BRING

13    THAT TO THE COURT'S ATTENTION WAS BECAUSE YOUR HONOR DID

14    MAKE THE STATEMENT IN THE PROBABLE CAUSE ISSUE THAT

15    MR. IGARIAN DID NOT SAY ANY OF THOSE THINGS, THAT THIS IS A

16    COLLECTIVE; AND MY PURPOSE OF TELLING THIS TO THE COURT WAS

17    THAT MR. IGARIAN DIDN'T KNOW ANY OF THAT, AND IT WAS HIS

18    FIRST TIME THERE.  SO I JUST WANTED TO CLARIFY WITH THE

19    COURT.

20              THE COURT:  WELL, THAT'S NEITHER HERE NOR THERE.

21    YOU CAN CLARIFY WHATEVER IT IS.  IT'S MEANINGLESS AS FAR AS

22    I'M CONCERNED BECAUSE THIS IS NOT PART OF YOUR MOTION AND

23    IT'S NEITHER HERE NOR THERE.

24              YOU DON'T GET TO SORT OF LIKE SAY, "OH, I DON'T

25    WANT TO BE PART OF THIS MOTION BECAUSE I DON'T THINK I HAVE
```

 1    STANDING, BUT HERE, I WANT YOU TO HEAR MY FAVORABLE POINT."

 2              MS. BAGHDAIAN:   NO.   I JUST WANTED TO --

 3              THE COURT:   THAT'S NEITHER HERE NOR THERE.

 4              MS. BAGHDAIAN:   -- CLARIFY THAT, YOUR HONOR.

 5    THANK YOU.

 6              THE COURT:   ALL RIGHT.   VERY GOOD.

 7              MR. WALSH.

 8              MR. WALSH:   YES, YOUR HONOR, IN LOGICAL SEQUENCE,

 9    I THINK, THE ARGUMENT I WANTED TO MAKE IS THAT THE COURT HAS

10    TO FOLLOW THE FEDERAL STANDARD OF THE FOURTH AMENDMENT AND

11    DETERMINE WHETHER THERE'S PROBABLE CAUSE TO SEARCH, AND IT

12    REQUIRES A SHOWING OF A FAIR PROBABILITY THAT CONTRABAND OR

13    EVIDENCE OF A CRIME WILL BE FOUND IN A PARTICULAR PLACE.

14              SO THAT'S THE ISSUE THAT THE COURT HAS TO DECIDE.

15              THE COURT HAS ALREADY RULED THAT YOU HAVE TO LOOK

16    AT CALIFORNIA STATE LAW TO MAKE A DETERMINATION WHETHER

17    THERE'S BEEN A CRIMINAL VIOLATION THAT OCCURRED.

18              AND BECAUSE OF THESE MEDICAL MARIJUANA LAWS, NOT

19    ALL CULTIVATION OF MARIJUANA IN CALIFORNIA IS A CRIME.

20    SOMETIMES IT IS A CRIME, AND SOMETIMES IT IS NOT A CRIME.

21    GROWING MEDICAL MARIJUANA FOR MEDICAL PERSONS WITH A

22    PHYSICIAN'S RECOMMENDATION, THE MARIJUANA THAT'S GROWING IS

23    NOT CONTRABAND.

24              UNDER THE FOURTH AMENDMENT, THE POLICE OFFICERS

25    CAN ONLY SEIZE EVIDENCE THAT THEY HAVE REASONABLE SUSPICION

                         DECEMBER 15, 2010

1    AND REASONABLE CAUSE TO BELIEVE IS CONTRABAND EVIDENCE.  AND

2    IT'S OUR POSITION THAT ANY WELL TRAINED NARCOTICS OFFICER IN

3    THE STATE OF CALIFORNIA HAS TO BE AWARE OF THE COMPASSIONATE

4    USE ACT, THE MEDICAL MARIJUANA PROGRAM ACT, THE CALIFORNIA

5    ATTORNEY GENERAL GUIDELINES, AND THE LAW THAT SETS THIS OUT.

6         I MEAN, IT IS TRUE THAT THE MEDICAL MARIJUANA

7    STATUTES PROVIDE A DEFENSE AT THE TIME OF TRIAL, BUT THEY

8    ALSO ESTABLISH THE ELEMENTS OF THE CRIME.

9         AND WHEN A POLICE OFFICER IS CONDUCTING AN

10   INVESTIGATION OF MARIJUANA THAT'S GROWING AT A LOCATION --

11        THE COURT:  WELL, THAT'S AN INCONSISTENT STATEMENT

12   BECAUSE AN AFFIRMATIVE DEFENSE IS NOT AN ELEMENT OF THE

13   CRIME.

14        MR. WALSH:  WELL, IT WOULD BE AN ELEMENT OF THE

15   ISSUE OF PROBABLE CAUSE BECAUSE --

16        THE COURT:  OH, OF COURSE.  IT IS SOMETHING THAT

17   IF THEY KNEW SOMETHING AND THEY KNEW IT LIKE PERHAPS WHAT

18   HAPPENED IN THE $186,000 CASE, OF COURSE, THEY HAVE TO TAKE

19   IT INTO ACCOUNT.

20        THAT'S ALL -- BECAUSE THE PROBABLE CAUSE IS THE

21   TOTALITY OF THE CIRCUMSTANCES, BUT THAT'S WHAT WE'RE DOING.

22   WE'RE LOOKING AT THE TOTALITY OF THE CIRCUMSTANCES PRESENT

23   BEFORE THE OFFICER.

24        MR. WALSH:  AND OUR POSITION IS THE OFFICERS ACTED

25   WITHOUT MAKING A DETERMINATION AS TO WHETHER THIS WAS

```
 1   MEDICAL MARIJUANA OR UNLAWFULLY GROWN MARIJUANA --
 2            THE COURT:  AND YOU DON'T THINK THAT A REASONABLE
 3   PERSON UNDER THE CIRCUMSTANCES GIVEN, AT LEAST, IN PART
 4   MR. IGARIAN'S REACTION TO ALL OF THIS, THAT THAT WOULD NOT
 5   GIVE RISE FOR A REASONABLE PERSON TO CONCLUDE THAT THERE'S
 6   PROBABLE CAUSE THAT THIS WAS AN ILLEGAL GROW, NOT A LEGAL
 7   GROW?
 8            MR. WALSH:  OUR POSITION IS IT WOULDN'T BECAUSE
 9   BASICALLY HE GAVE NO INFORMATION.  SO IT'S A SITUATION WHERE
10   A PERSON IS QUESTIONED AFTER --
11            THE COURT:  HE NOT ONLY GAVE NO INFORMATION -- IF
12   HE SAID, "I DON'T WANT TO TALK TO YOU," THAT'S NO
13   INFORMATION.
14            HE GAVE FACIALLY, SHALL WE SAY, KINDLY, AT LEAST
15   HIGHLY UNLIKELY INFORMATION, BUT MORE LIKELY UNTRUE
16   INFORMATION.  TO SAY "I HAVE NO IDEA WHAT'S GOING ON IN
17   THERE" AND "I WAS JUST IN THERE FOR 15 MINUTES," THAT
18   STRETCHES CREDULITY.
19            AND, YOU KNOW, I'M NOT SAYING THAT'S THE ONLY
20   ISSUE, OBVIOUSLY, THE ONLY POINT BECAUSE WE LOOK AT THE
21   TOTALITY, BUT WE CAN'T FORGET THAT EITHER.
22            MR. WALSH:  WELL, AND THE OTHER POINT I THINK IS
23   WORTH NOTING IS THAT THE COURT IS TESTING PROBABLE CAUSE
24   AFTER EXCISING THE OBSERVATIONS OF WHAT'S INSIDE THE
25   WAREHOUSE.
```

DECEMBER 15, 2010

```
 1              SO AT THE TIME THAT THE POLICE OFFICERS WERE

 2   DEVELOPING THEIR PROBABLE CAUSE, THEIR PRE-EXISTING PROBABLE

 3   CAUSE, THEY DON'T KNOW HOW MANY PLANTS ARE INSIDE THE

 4   WAREHOUSE, AND THEY DON'T KNOW THE EXACT RELATIONSHIP OF

 5   MR. IGARIAN WHO'S GIVING THESE EVASIVE ANSWERS AND SO ALL --

 6              THE COURT:  THEY MAY NOT KNOW THE EXACT NUMBER OF

 7   PLANTS; BUT THEY HAVE CERTAINLY INDICIA OF A GROW, SOME

 8   CULTIVATION EFFORT BECAUSE THE OFFICER DID SAY THAT MY

 9   EXPERIENCE IS, YOU KNOW, YOU NEED THESE BAMBOO STALKS IN

10   ORDER TO, YOU KNOW, HELP WITH THE PLANTS AS THEY GET BIGGER

11   AND YOU NEED THIS PROPANE TANK FOR WHATEVER USE THAT PEOPLE

12   DO IN INDOOR GROWS.

13              SO, YOU KNOW, THIS IS NOT JUST SOMETHING SOMEBODY

14   DECIDED TO GO AND GROW ONE LITTLE PLANT OR SOMETHING LIKE.

15   THERE IS INDICATION OF SOME SORT OF GROW.

16              MR. WALSH:  AND IT'S OUR POSITION THAT IT'S

17   INCUMBENT UPON THE OFFICER AT THAT POINT, IN ORDER TO MAKE A

18   DETERMINATION WHETHER THIS IS AN ILLEGAL GROW OR A MEDICAL

19   GROW, AND WITHOUT HIM MAKING THAT DETERMINATION AND

20   DEVELOPING AND DECIDING TO STOP AT THAT POINT AND --

21              BECAUSE WHEN WE WERE RETESTING THE SEARCH WARRANT

22   AFFIDAVIT, IT'S AS THOUGH THE OFFICER STOPPED AT THAT POINT

23   AND THEN APPLIED FOR THE SEARCH WARRANT AFFIDAVIT WITH THIS

24   PRE-EXISTING PROBABLE CAUSE.

25              AND OUR POSITION IS THAT'S A PREMATURE STOPPING,
```

1    WHICH DOESN'T RESOLVE THE QUESTION OF WHETHER OR NOT THE

2    MARIJUANA THAT'S GROWING -- THAT HE BELIEVES TO BE GROWING

3    IN THERE IS LEGAL OR ILLEGAL, AND HE MAY ONLY SEIZE IT IF

4    IT'S ILLEGAL CONTRABAND.

5           AND I MIGHT POINT OUT, YOUR HONOR, THAT IN THE

6    FIRST PARAGRAPH OF THE ATTORNEY GENERAL'S REPORT, GIVING

7    GUIDELINES FOR THE GROWING OF MEDICAL MARIJUANA, THERE'S A

8    STATEMENT IN THERE THAT (AS READ:)

9         *"THE PURPOSE OF THIS REPORT IS -- " NUMBER TWO " -- TO*

10        *HELP LAW ENFORCEMENT AGENCIES PERFORM THEIR DUTIES*

11        *EFFECTIVELY AND IN ACCORDANCE WITH CALIFORNIA LAW."*

12          SO WHAT IT MEANS IS THAT POLICE OFFICERS HAVE TO

13   BE AWARE OF THIS DISTINCTION BETWEEN CONTRABAND MARIJUANA

14   AND MARIJUANA THAT IS NOT CONTRABAND, THAT IS MEDICAL

15   MARIJUANA.  AND WHEN THEY'RE CONDUCTING THESE

16   INVESTIGATIONS, THERE HAS TO BE SOME MINIMAL TYPE OF

17   INVESTIGATION TO RESOLVE THAT ISSUE.

18          WE CAN SAY THAT HE HAD PROBABLE CAUSE TO BELIEVE

19   THERE WAS MARIJUANA IN THE WAREHOUSE, BUT BECAUSE OF THIS

20   DICHOTOMY IN CALIFORNIA LAW, THAT SOME MARIJUANA IS ILLEGAL

21   AND SOME MARIJUANA IS PERFECTLY LEGAL, THAT DICHOTOMY HAS TO

22   BE RESOLVED IN SOME FASHION.

23          THE COURT:  I DISAGREE BECAUSE, IN THE ABSENCE OF

24   SOME CLEAR SHOWING THAT A CARVE-OUT IS APPLICABLE, HE HAS NO

25   OBLIGATION TO GO AHEAD AND MAKE SURE THAT HE NEGATES THE

```
 1   POSSIBILITY OF A LAWFUL CULTIVATION.  THAT'S WHAT YOU'RE

 2   ARGUING.

 3         MR. WALSH:  THAT'S WHAT OUR ARGUMENT IS, YES,

 4   YOUR HONOR.

 5         THE COURT:  OKAY.  ALL RIGHT.  VERY GOOD.

 6         MR. WALSH:  I THINK MR. BROOKLIER HAD --

 7         THE COURT:  MR. BROOKLIER --

 8         MR. WALSH:  -- WANTED TO SHOW --

 9         THE COURT:  ABSOLUTELY.  YOU HAVEN'T BEEN HEARD

10   YET.  YOU KNOW, YOU OBVIOUSLY ARE NOT SATISFIED WITH

11   COUNSEL'S ARGUMENT SO FAR.  SO YOU'RE GOING TO TRY TO CLEAN

12   IT UP FOR THEM.

13         MR. BROOKLIER:  I'M NOT THE CLEAN-UP HITTER,

14   YOUR HONOR.

15         THE COURT:  ALL RIGHT.

16         MR. BROOKLIER:  I'M JUST A PINCH HITTER, VERY

17   RARELY CALLED UPON.

18         THE COURT:  OKAY.

19         MR. BROOKLIER:  ANYWAY, THERE IS ONE INDICIA THAT

20   NOBODY HAS TALKED ABOUT YET, I DON'T BELIEVE, AND THAT IS MY

21   CLIENT'S DECLARATION THAT GOES TO STANDING, ET CETERA.  IN

22   PARAGRAPH 6, HE STATES THAT HE HAD A --

23         THE COURT:  I'M SORRY.  YOUR CLIENT IS?

24         MR. BROOKLIER:  IS HAYK KARAYAN.  I'M SORRY,

25   YOUR HONOR.
```

DECEMBER 15, 2010

```
 1              THE COURT:  HAYK KARAYAN.  YES, I HAVE HIS

 2    DECLARATION HERE.  PARAGRAPH 6, DID YOU SAY?

 3              MR. BROOKLIER:  PLEASE, YOUR HONOR.

 4              THE COURT:  OKAY.  LET ME GO TO THAT.

 5              MR. BROOKLIER:  I THINK AS THE RECORD STANDS RIGHT

 6    NOW, MY CLIENT HAS INDICATED THAT ONE OF THE OFFICERS

 7    EXAMINED THE CONTENTS OF HIS WALLET.  THIS IS, OF COURSE,

 8    PRIOR TO THE TIME THE SEARCH WARRANT WAS SOUGHT, AND

 9    MR. KARAYAN SAYS, "HE APPEARED TO HAVE REMOVED MY

10    PHYSICIAN'S RECOMMENDATION, TO HAVE READ IT, AND PLACED IT

11    BACK IN MY WALLET."

12              AS AN OFFER OF PROOF -- I DON'T KNOW IF THE COURT

13    THINKS THIS IS IMPORTANT, BUT HAVING SEEN -- I THINK OFFICER

14    COYLE IS HERE.  MY CLIENT, WHO IS SITTING CLOSEST TO

15    YOUR HONOR, HAS INDICATED TO ME.  AND THIS IS ONLY AN OFFER

16    OF PROOF THAT IT WAS OFFICER COYLE WHO, IN FACT, SAW THAT

17    AND APPEARED TO HAVE READ HIS --

18              THE COURT:  PERHAPS, MAYBE I CAN REMIND YOU OF

19    THIS.  I DON'T KNOW WHETHER MAYBE YOU DIDN'T TAKE NOTE OF IT

20    WHILE I MENTIONED IT.  I THINK, FOR PURPOSES OF MY ANALYSIS,

21    I -- IN FACT, I MENTIONED TO MR. REED THAT THERE IS EVIDENCE

22    IN THIS RECORD ABOUT EACH OF THE MOVING DEFENDANTS HAVING

23    THIS SO-CALLED DOCTOR RECOMMENDATION.

24              I HAVE CLEARLY READ YOUR CLIENT'S DECLARATION,

25    SPECIFICALLY, PARAGRAPH 6, AS WELL AS ALL OTHER PARAGRAPHS.
```

DECEMBER 15, 2010

```
 1    AND I DID SAY THAT FOR PURPOSES OF OUR ANALYSIS BECAUSE

 2    I'M -- I DON'T THINK WE NEED TO HAVE AN EVIDENTIARY HEARING

 3    BECAUSE IT WOULD BE NOT A MATERIAL DISPUTE BECAUSE I'M

 4    WILLING TO ASSUME, FOR PURPOSES OF MY ANALYSIS, THAT THE

 5    POLICE WERE AWARE OF THESE THREE RECOMMENDATIONS, INCLUDING

 6    YOURS.

 7             MR. BROOKLIER:  THANK YOU, YOUR HONOR.

 8             I DID HEAR WHAT YOU SAID, BUT THAT WOULD GET ME TO

 9    MY LAST POINT THAT NONE OF THIS WAS PLACED IN THE AFFIDAVIT

10    THAT WAS PRESENTED TO THE MAGISTRATE WHO ISSUED THE SEARCH

11    WARRANT IN THIS CASE.

12             THE COURT:  AND I TAKE IT, THEN, YOUR ARGUMENT IS

13    IF IT HAD BEEN PUT BEFORE THE MAGISTRATE, THE STATE

14    MAGISTRATE, THAT THESE THREE DEFENDANTS HAD A DOCTOR'S

15    RECOMMENDATION, THAT SOMEHOW THAT WOULD HAVE IN THE TOTALITY

16    OF THE CIRCUMSTANCES VITIATED PROBABLE CAUSE.

17             MR. BROOKLIER:  I THINK A MAGISTRATE CLEARLY COULD

18    HAVE, AT THAT POINT, LOOKED AT IT -- A REASONABLE MAGISTRATE

19    COULD HAVE LOOKED AT IT AND ASKED THEM TO GO BACK AND DO

20    MORE, GET MORE INFORMATION.

21             I THINK THAT'S SOMETHING THAT SHOULD HAVE BEEN

22    GIVEN TO THE MAGISTRATE BECAUSE IT'S A FACT AND SOMETHING

23    FOR THE MAGISTRATE TO CONSIDER.  THEY LEFT IT OUT.  AND THAT

24    GOES RIGHT TO THE HEART OF OUR ARGUMENT.

25             THE COURT:  OKAY.
```

DECEMBER 15, 2010

1              MR. BROOKLIER:  THANK YOU, YOUR HONOR.

2              THE COURT:  ANYBODY ELSE?

3              MR. WALSH:  JUST TO FOLLOW UP ON THAT, YOUR HONOR.

4              THE COURT:  WELL, ALL RIGHT.  WE'RE NOT GOING TO

5    KEEP GOING ON, MR. WALSH.  I KNOW HOW MUCH YOU'RE ENJOYING

6    THIS, BUT AT SOME POINT, WE HAVE TO MOVE ON.

7              MR. WALSH:  OKAY.  I'LL TRY TO BE VERY BRIEF.

8              I THINK THE LAST POINT BROUGHT UP BY MR. BROOKLIER

9    BRINGS US WITHIN THE HOLDING OF THE 186,000 FORFEITURE CASE.

10             IN OTHER WORDS, THERE WAS A MATERIAL OMISSION BY

11   THE AFFIANT BY NOT INCLUDING THAT IN THE WARRANT, AND THAT

12   WOULD GO TO THE ISSUE OF WHETHER THIS WAS CONTRABAND

13   MARIJUANA OR LAWFULLY POSSESSED MARIJUANA.

14             THE COURT:  IT DOESN'T GO TO THAT AT ALL,

15   NECESSARILY.  OKAY.

16             I THINK YOU'RE OVERSTATING IT BECAUSE THE MERE

17   FACT THAT SOMEBODY HAS A RECOMMENDATION FROM A DOCTOR SAYS

18   NOTHING ABOUT LAWFUL CULTIVATION UNDER THE M.M.P.A.,

19   NOTHING.  THAT MAY BE ONE REQUIREMENT; THAT MAY BE ONE

20   THING.  BUT THERE'S A WHOLE ARRAY OF OTHER THINGS WHICH DO

21   NOT, ARE NOT KNOWN TO -- AND YOU'RE NOT EVEN SAYING THAT

22   THEY EVEN EXISTED -- BUT FINE, WE'RE NOT GOING TO BE

23   RESULT-ORIENTED.

24             WE WILL SORT OF RESIST THE NOTION THAT THERE

25   REALLY ISN'T ANYTHING ELSE BECAUSE OTHERWISE IT WASN'T

DECEMBER 15, 2010

```
 1    PRESENTED TO ME BECAUSE THAT'S NOT REALLY RELEVANT TO MY

 2    PROBABLE CAUSE DETERMINATION.

 3              BUT THE FACT OF THE MATTER IS THE RECOMMENDATION

 4    IS MERELY ONE OF MANY, MANY FACTORS THAT WOULD BE NEEDED TO

 5    ESTABLISH THE AFFIRMATIVE DEFENSES UNDER CALIFORNIA LAW.

 6              AND IN THIS CASE EVEN IF WE ASSUME THAT THIS WAS A

 7    MATERIAL OMISSION -- I DON'T MEAN THAT.

 8              I MEAN LET'S ASSUME THAT THIS WAS AN OMISSION,

 9    THAT THIS OMISSION EVEN QUALIFIED UNDER FRANKS TO BE PUT

10    BACK IN -- I DON'T THINK IT'S MATERIAL IN LIGHT OF ALL THESE

11    CIRCUMSTANCES, BUT YOU OBVIOUSLY DISAGREE, AND THAT'S YOUR

12    POINT.

13              MR. WALSH:  YES, I DISAGREE WITH THAT.

14              THE COURT:  ALL RIGHT.

15              MR. WALSH:  AND WE THINK IT GOES DIRECTLY TO THE

16    ISSUE OF WHETHER IT WAS CONTRABAND MARIJUANA THAT COULD BE

17    SEIZED UNDER THE FOURTH AMENDMENT.

18              AND THEN THERE WAS ONE OTHER FINAL FACTUAL ISSUE

19    THAT WE WOULD REQUEST AN EVIDENTIARY HEARING ON, AND THAT IS

20    THERE WAS SOME LANGUAGE IN SEGURA THAT STATES THAT THE

21    INDEPENDENT SOURCE DOCTRINE DOESN'T APPLY IF THE OFFICER WAS

22    MOTIVATED TO GET THE SEARCH WARRANT BASED UPON HIS

23    OBSERVATIONS IN THE FIRST ILLEGAL SEARCH.

24              AND THE OFFICER'S FILED A DECLARATION SAYING THAT

25    HE WASN'T MOTIVATED BY THAT, AND WE'D ASK TO HAVE AN
```

```
 1    EVIDENTIARY HEARING ON THAT ISSUE, TO CROSS-EXAMINE HIM
 2    BECAUSE THAT'S ONE OF THE FINDINGS THAT THE COURT HAS TO
 3    MAKE AND --
 4              THE COURT:  WELL, WE HAVE --
 5              MR. WALSH:  -- WE HAVE SOME QUESTIONS OF HIM.
 6              THE COURT:  IT WOULD CERTAINLY BE THE CASE, HAD
 7    YOU CHALLENGED HIM.  YOU NOWHERE CHALLENGED HIM.
 8              I CHALLENGE YOU TO SHOW ME WHERE YOU CHALLENGE
 9    THAT STATEMENT.  I WAS SPECIFICALLY COGNIZANT OF THAT ISSUE.
10    IT WAS IN THE DECLARATION AT PARAGRAPH 5 OF OFFICER COYLE.
11    YOU FOLKS DID NOT CHALLENGE IT.
12              MR. WALSH:  WE BRIEF --
13              THE COURT:  NOWHERE DID YOU CHALLENGE IT IN YOUR
14    OPENING BRIEF OR YOUR REPLY BRIEF.  SO AS FAR AS I'M
15    CONCERNED, YOU HAVE WAIVED ANY FACTUAL CHALLENGE AS TO THAT,
16    AND I CAN MAKE MY FACTUAL DETERMINATION ON THIS RECORD
17    BECAUSE YOU FAILED TO DO SO.
18              MR. WALSH:  WELL, I THINK WE BRIEFED IT IN THE
19    MOVING -- THE PARTIES HIGHLIGHTED THAT THE COURT HAD TO MAKE
20    A FINDING ON THAT, AND THE GOVERNMENT'S RESPONSE WAS TO FILE
21    THAT DECLARATION.
22              THE COURT:  WELL, WHY DON'T YOU SHOW ME WHERE YOU
23    SPECIFICALLY SAY THAT, AND IF I'M WRONG, THEN WE CAN HAVE A
24    BRIEF EVIDENTIARY HEARING ON THAT POINT.  THAT'S NOT A
25    PROBLEM.
```

DECEMBER 15, 2010

```
 1              MR. WALSH:  PAGE 33 OF THE MOTION TO SUPPRESS, WE
 2    MADE THE ARGUMENT AND BRIEFED THE CASES THAT THE ARGUMENT --
 3              THE COURT:  JUST A MINUTE.  LET ME LOOK AT
 4    PAGE 33.  WHAT LINE?
 5              MR. WALSH:  THIRTEEN IS JUST THE HEADING.
 6              THE COURT:  OKAY.  DID YOU SAY THAT THE OFFICER
 7    WOULD NOT HAVE DONE IT BUT FOR THAT?
 8              MR. WALSH:  I THINK THAT'S WHAT WE'RE SAYING.
 9    WE'RE SAYING THE DECISION TO SEEK THE WARRANT IN THIS CASE
10    WAS PROMPTED BY WHAT THE OFFICER SAW DURING THE ILLEGAL
11    SEARCH --
12              THE COURT:  OKAY.
13              MR. WALSH:  -- AND THUS THE WARRANT WAS NOT AN
14    INDEPENDENT SOURCE.
15              AND THEN, IN RESPONSE TO THAT, THERE WAS ONE LINE
16    IN DEPUTY COYLE'S STATEMENT WHERE HE SAYS HE WOULD HAVE
17    GOTTEN THE SEARCH WARRANT ANYWAY.
18              THE COURT:  RIGHT.  AND DID YOU CHALLENGE THAT?
19    NOW THAT HE HAS PUT THAT IN THERE, DID YOU DISPUTE IT?
20              MR. BROOKLIER:  YOUR HONOR, MAY I RESPOND TO THAT?
21              THE COURT:  YES.
22              MR. BROOKLIER:  HOW COULD WE DISPUTE IT BECAUSE IT
23    GOES TO HIS STATE OF MIND?  WE WOULD HAVE TO BE
24    MIND-READERS.  I THINK OBVIOUSLY -- WITH RESPECT I SAY
25    THIS -- WE DISPUTE IT BECAUSE WE BRING IT UP, BUT THERE
```

```
 1    WOULD BE NO PRACTICAL WAY THAT I CAN THINK OF DISPUTING THAT

 2    WITHOUT HAVING AN EVIDENTIARY HEARING.

 3              THE COURT:  DID YOU FOLKS ASK TO CROSS-EXAMINE ON

 4    THIS POINT?

 5              MR. WALSH:  WELL, WE'RE ASKING NOW, YOUR HONOR.

 6              THE COURT:  BUT YOU DIDN'T ASK IN YOUR PAPERS.

 7              MR. WALSH:  NO, BUT I THOUGHT THAT WE COULD --

 8              THE COURT:  WELL, THAT'S FINE.  I THINK WE CAN

 9    HAVE IT.  IF THAT'S WHAT YOU WANT, WE CAN HAVE A BRIEF

10    EVIDENTIARY HEARING AT 1:30, AND I THINK YOU HAVE TO BE BACK

11    AT JUDGE ANDERSON AT 1:00 O'CLOCK?

12              MR. BROOKLIER:  YES.  HE'S SAID I NEED TO COME

13    BACK AT 1:00 O'CLOCK.

14              THE COURT:  THAT'S WHAT I MEAN.  YOU'RE AT

15    1:00 O'CLOCK, AND HE ASSURES ME YOU'LL BE BACK BY 1:30.

16              MR. BROOKLIER:  YES.

17              THE COURT:  OKAY.  VERY GOOD.

18              ALL RIGHT.  MR. WOLFE, IF YOU WANT TO BE HEARD ON

19    THE ISSUE OF PROBABLE CAUSE, SINCE YOU HAVEN'T HAD A CHANCE

20    TO ADDRESS THAT, I'LL HEAR FROM YOU.

21              MR. WOLFE:  EXCUSE ME.  YOUR HONOR, YOUR HONOR'S

22    ALREADY SEIZED ON THE POINT THAT THE MEDICAL MARIJUANA IS AN

23    AFFIRMATIVE DEFENSE.

24              I'D MAKE ONLY ONE OTHER POINT.  THIS ANALYSIS IS

25    AT THE PROBABLE CAUSE LEVEL.  DEFENDANTS SAY THE INFORMATION
```

```
1    IS EQUALLY CONSISTENT WITH LAWFUL AND UNLAWFUL CULTIVATION.

2            PROBABLE CAUSE IS NOT BY A PREPONDERANCE OF THE

3    EVIDENCE.  IT'S SIMPLY A FAIR PROBABILITY; AND EVEN IF THE

4    COURT BELIEVED THAT IT WAS EQUALLY CONSISTENT WITH THE TWO,

5    IT'S NOT THE SAME AS THE NEGATIVING (SIC) OF PROBABLE CAUSE.

6            UNLESS YOUR HONOR HAS A QUESTION, I'LL SUBMIT.

7            THE COURT:  DO YOU WANT TO ADDRESS THE ISSUE OF

8    THE EVIDENTIARY HEARING THAT THEY'RE REQUESTING?

9            MR. WOLFE:  WELL, I AGREE THAT IT IS A REQUIREMENT

10   THAT THE OFFICER NOT HAVE BEEN MOTIVATED SOLELY BY WHAT HE

11   SAW.  WHETHER THEY'VE PROCEDURALLY SATISFIED THE REQUIREMENT

12   IN THEIR REPLY, I WOULD THINK AT LEAST THE INTENTION OF THE

13   LOCAL RULE ON SUPPRESSION MOTIONS IS THAT THEY OUGHT TO HAVE

14   SAID SOMETHING ABOUT A DECLARATION IN THEIR REPLY PAPERS,

15   AND WHETHER THAT AMOUNTS TO A WAIVER, I THINK IS A

16   PROCEDURAL QUESTION FOR THE COURT.

17           THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND HAVE A

18   LIMITED EVIDENTIARY HEARING AT 1:30.  COME BACK AT THAT

19   TIME.  MAKE SURE OFFICER COYLE IS HERE.

20           MR. WOLFE:  YES, YOUR HONOR.

21           THE COURT:  I WILL HAVE HIM TAKE THE STAND AND

22   CONFIRM HIS STATEMENT IN HIS DECLARATION AS HIS DIRECT

23   TESTIMONY, AND THEN HE'LL BE SUBJECT TO CROSS-EXAMINATION

24   BUT ONLY ON THAT ISSUE -- AND NO OTHER ISSUE -- AS TO

25   WHETHER OR NOT, REGARDLESS OF WHAT THEY MAY HAVE SEEN
```

DECEMBER 15, 2010

1  POST-ENTRY, THAT HE WOULD HAVE SOUGHT A WARRANT BECAUSE

2  THAT'S THE ONLY ISSUE REMAINING.

3          MR. WOLFE:  VERY WELL, YOUR HONOR.

4          THE COURT:  ALL RIGHT.  WE'LL SEE YOU FOLKS AT

5  1:30.  THANK YOU VERY MUCH.

6          THE CLERK:  THIS COURT NOW STANDS IN RECESS.

7              *(WHEREUPON AT 12:05 P.M.*

8              *THE LUNCH RECESS WAS TAKEN.)*

DECEMBER 15, 2010

```
 1            LOS ANGELES, CALIFORNIA; WEDNESDAY, DECEMBER 15, 2010

 2                                1:36 P.M.

 3                                 --OOO--

 4            THE CLERK:  PLEASE REMAIN SEATED AND COME TO

 5   ORDER.  THIS UNITED STATES DISTRICT COURT IS BACK IN

 6   SESSION.

 7            THE COURT:  ALL RIGHT.  WE'RE BACK ON THE RECORD

 8   IN THE MATTER OF U.S. VERSUS GAMBARYAN, ET AL.  DEFENDANTS

 9   ARE PRESENT, COUNSEL ARE PRESENT.

10            MR. REED.

11            MR. REED:  YOUR HONOR, MR. WALSH IS GOING TO

12   CONDUCT THE EXAMINATION OF DETECTIVE COYLE, BUT I JUST

13   WANTED TO CLARIFY VERY QUICKLY A MINOR POINT, YOUR HONOR,

14   DURING THE PROBABLE CAUSE ARGUMENT SESSION THAT WE HAD.

15            IT WAS MY FAULT THAT I FAILED TO, PERHAPS, RESPOND

16   TO THE COURT WHEN THE COURT WAS DOING THE PROBABLE CAUSE

17   ANALYSIS AND GOING THROUGH ALL THE REQUIREMENTS THAT AN

18   ORGANIZATION HAD TO JUMP THROUGH IN ORDER TO REGISTER IN A

19   PARTICULAR CASE.

20            I THINK THE COURT WAS TALKING ABOUT COOPERATIVES.

21   A STATUTORY COOPERATIVE, I THINK THE COURT WAS THINKING OF

22   WHEN IT WAS TALKING ABOUT ALL THESE DIFFERENT THINGS THAT AN

23   ORGANIZATION HAD TO DO IN ORDER TO BE LAWFUL, WHICH

24   EVIDENTLY HAD NOT BEEN DONE IN THIS PARTICULAR CASE, BUT

25   THIS WAS A COLLECTIVE, YOUR HONOR.
```

```
 1            WHEN YOU REVIEW THE REGULATIONS THAT WE SUBMITTED

 2   IN SUPPORT OF OUR MOTIONS, TAKE NOTE OF PAGE 8 AND SEE THE

 3   DIFFERENCE BETWEEN COLLECTIVES AND COOPERATIVES.

 4            WHAT WE HAVE BEEN ALLEGING IN THIS MOTION ALL

 5   ALONG IS THAT THIS WAS A COLLECTIVE, NOT A COOPERATIVE.

 6             A COLLECTIVE IS JUST AN INFORMAL GROUP OF PEOPLE

 7   WHO GET TOGETHER TO FACILITATE COLLABORATIVE EFFORTS IN

 8   GROWING MARIJUANA.  IT'S AN INFORMAL GROUP, NOTHING HAS TO

 9   BE REGISTERED, NOTHING HAS TO BE DONE IN ORDER TO OPERATE AS

10   A COLLECTIVE.

11            I JUST WANTED TO BRING THAT TO THE COURT'S

12   ATTENTION BEFORE IT MAKES ANY FINAL ORDER IN THIS CASE.  I

13   THINK IT HAS A LOT TO DO WITH WHETHER THERE WAS SUFFICIENT

14   PROBABLE CAUSE UNDER STATE LAW.

15            WE'RE CONTENDING THIS WAS A COLLECTIVE, NOT A

16   COOPERATIVE, AND THEREFORE, THE POLICE OFFICER SAW THINGS

17   WHICH WERE COMPLETELY CONSISTENT WITH A COLLECTIVE

18   OPERATING, A LAWFUL COLLECTIVE, NOT A COOPERATIVE.

19            THE COURT:  SO YOUR VIEW IS THAT UNDER CALIFORNIA

20   LAW ANYBODY CAN GET TOGETHER AND GROW MARIJUANA AND CALL

21   THEMSELVES A COLLECTIVE?

22            MR. REED:  NO, THEY HAVE TO HAVE DOCTOR

23   RECOMMENDATIONS.

24            THE COURT:  THAT'S IT?  JUST DOCTOR

25   RECOMMENDATIONS?  SO EVERYBODY SO LONG AS -- OR NOT EVEN
```

```
 1    EVERYBODY HERE BECAUSE WE HAVE ONLY, IF ANYTHING, EVIDENCE

 2    OF THREE DOCTOR RECOMMENDATIONS AND WE CERTAINLY HAVE MORE

 3    PEOPLE INVOLVED IN THE ALLEGED COLLECTIVE THAN THOSE THREE

 4    PEOPLE.

 5            SO YOUR VIEW IS THAT SO LONG AS SOMEBODY HAS A

 6    DOCTOR RECOMMENDATION, THEN ANY NUMBER OF PEOPLE IN ADDITION

 7    THERETO CAN DEEM THEMSELVES A COLLECTIVE UNDER CALIFORNIA

 8    LAW?

 9            MR. REED:  AS LONG AS THEY ALL HAVE

10    RECOMMENDATIONS.  ALL THE MEMBERS HAVE TO HAVE

11    RECOMMENDATIONS.

12            THE COURT:  UH-HUH.

13            MR. REED:  AND THEY ALL HAVE TO JOIN COLLECTIVELY

14    AS A GROUP.

15            THE COURT:  AND WHAT EVIDENCE DO WE HAVE THAT THEY

16    ALL HAD A DOCTOR RECOMMENDATION, OTHER THAN THESE THREE?

17    MR. IGARIAN DIDN'T HAVE ANY.  MR. GARIBYAN, I'M NOT SURE IF

18    MR. GARIBYAN HAD ANY.

19            MR. REED:  WE'RE JUMPING TO A HINDSIGHT ANALYSIS

20    NOW AND LOOKING AT IT IN HINDSIGHT.  ALL I WAS TRYING TO --

21            THE COURT:  I'M JUST SAYING, IT'S NOT THAT IT'S

22    HINDSIGHT.

23            IT'S AT THE TIME THAT IT WAS PRESENTED TO THE

24    OFFICERS, WHEN THEY WERE KNOWN, THERE WAS NOTHING THERE THAT

25    THEY KNEW ABOUT; THEY DIDN'T SEE ANYTHING ABOUT ANY KIND OF
```

DECEMBER 15, 2010

```
 1    A COLLECTIVE FROM -- I MEAN ANY KIND OF A RECOMMENDATION FOR

 2    MR. GARIBYAN OR MR. IGARIAN.

 3            MR. REED:  AND IT'S OUR POSITION THAT THEY SHOULD

 4    HAVE DONE SOME KIND OF INVESTIGATION UNDER THESE NEW LAWS

 5    THAT HAVE BEEN HERE IN CALIFORNIA, THEY SHOULD HAVE DONE.

 6            THE COURT:  BUT OTHER THAN THAT, OTHER THAN THAT,

 7    YOU'RE SAYING ALL YOU NEED IS A DOCTOR'S RECOMMENDATION,

 8    THEN ANY NUMBER OF PEOPLE COULD GET TOGETHER AND BE A

 9    SO-CALLED COLLECTIVE.

10            MR. REED:  THAT'S CORRECT.  AS LONG AS THEY --

11            THE COURT:  AND YOU HAVE AUTHORITY FOR THAT?

12            MR. REED:  WELL, IT'S IN THE REGULATIONS,

13    YOUR HONOR.

14            THE COURT:  IN THE REGULATIONS.  TELL ME WHERE

15    DOES IT SAY --

16            MR. REED:  OKAY.  TAKE A LOOK AT PAGE 8 OF THE

17    ATTORNEY GENERAL REGULATIONS.  IT'S EXHIBIT F TO THE BRIEF

18    THAT DEFINES WHAT COLLECTIVES ARE.

19            THE COURT:  OKAY.

20            MR. REED:  DOWN AT THE BOTTOM.  THE COURT CAN READ

21    THROUGH IT.

22            THE COURT:  WHAT PAGE ARE YOU REFERRING TO?

23            MR. REED:  PAGE 8 OF THE ATTORNEY GENERAL

24    REGULATIONS DOWN AT THE BOTTOM.

25            "CALIFORNIA LAW DOES NOT DEFINE COLLECTIVES."
```

DECEMBER 15, 2010

```
 1    THEY HAVE TO ALLOCATE COSTS AMONGST THEMSELVES.  THEY ALL

 2    HAVE TO JOIN IN AND DO SOMETHING, SHARE COSTS IN THE GROWING

 3    OF THE MARIJUANA, SHIFTS, WHATEVER.

 4              THE COURT:  OKAY.

 5              MR. REED:  THERE'S NOTHING THAT THEY HAVE TO DO

 6    TO REGISTER WITH THE STATE OF CALIFORNIA.  IT'S AN INFORMAL

 7    GROUP.

 8              THE COURT:  OKAY.

 9              MR. REED:  AND THAT'S WHY WE SAY THAT THERE WAS NO

10    PROBABLE CAUSE UNDER STATE LAW IN THIS CASE.

11              THE COURT:  MR. WOLFE, DO YOU WANT TO BE HEARD ON

12    THAT LAST ISSUE BEFORE WE GO ON TO THE EVIDENTIARY HEARING?

13              MR. WOLFE:  YES, YOUR HONOR.

14              I WOULD POINT OUT THAT THE SECTION THAT DEFENSE

15    COUNSEL URGED ON THE COURT IS ROMAN NUMERAL IV, "GUIDELINES

16    REGARDING COLLECTIVES AND COOPERATIVES."  SECTION A THAT HE

17    CITED IS "BUSINESS FORMS."  SECTION B IS "GUIDELINES FOR THE

18    LAWFUL OPERATION OF A COOPERATIVE OR A COLLECTIVE."  IT

19    REQUIRES NON-PROFIT OPERATION.  IT REQUIRES BUSINESS

20    LICENSES, SALES TAX, AND SELLER'S PERMITS.

21              THE COURT:  I'M SORRY.  WHERE ARE YOU LOOKING AT

22    NOW?

23              MR. WOLFE:  PAGE 9 NOW.  I'M JUST TURNING OVER THE

24    PAGE.  IT REQUIRES APPLICATION AND VERIFICATION,

25    DISTRIBUTION AND SALES TO NON-MEMBERS ARE PROHIBITED, THEY
```

1    SHOULD BE ORGANIZED.  I'M READING NOW PAGE 9 AT THE VERY TOP

2    OF THE PAGE (AS READ:)

3         *"COLLECTIVES AND COOPERATIVES SHOULD BE ORGANIZED WITH*

4         *SUFFICIENT STRUCTURE TO ENSURE SECURITY, NON-DIVERSION*

5         *OF MARIJUANA TO ILLICIT MARKETS, AND COMPLIANCE WITH*

6         *ALL STATE AND LOCAL LAWS."*

7              AND I THINK BY THE DEFENDANT'S OWN TERMS, THEY

8    DIDN'T COMPLY WITH THOSE REGULATIONS.

9              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

10             ALL RIGHT.  ARE YOU READY TO CALL MR. COYLE?

11             MR. WOLFE:  YES, YOUR HONOR.

12             THE GOVERNMENT CALLS TRAVIS COYLE.

13             THE COURT:  OKAY.  JUST SO THAT WE UNDERSTAND HOW

14   WE'RE GOING TO DO THIS, YOU'RE GOING TO GO AHEAD AND PROFFER

15   HIS DECLARATION ON DIRECT EXAMINATION AND MAKE SURE THAT HE

16   ADOPTS IT.

17             AND THEN I'M GOING TO GIVE COUNSEL AN OPPORTUNITY

18   TO CROSS-EXAMINE ON THAT LIMITED ISSUE AS TO WHETHER OR NOT,

19   REGARDLESS OF WHAT HE MAY HAVE SEEN AFTERWARDS, AFTER THE

20   ENTRY, BUT WHATEVER INFORMATION HE HAD BEFORE HE ENTERED OR

21   ANY OFFICER ENTERED, WOULD HE, HAD HE KNOWN -- WHICH HE DID

22   KNOW OF WHATEVER IT IS THAT HE DID KNOW OF AT THAT POINT --

23   STILL HAVE OBTAINED THE WARRANT.

24             MR. WOLFE:  YES, YOUR HONOR.

25             THE COURT:  OKAY.

DECEMBER 15, 2010

```
 1          THE CLERK:  PLEASE WAIT BEHIND THE COURT REPORTER
 2   AND RAISE YOUR RIGHT HAND TO BE SWORN.
 3                    OFFICER TRAVIS COYLE,
 4       PLAINTIFF'S WITNESS, SWORN, TESTIFIED AS FOLLOWS:
 5          THE CLERK:  DO YOU SOLEMNLY SWEAR THAT THE
 6   TESTIMONY YOU SHALL GIVE IN THE CAUSE NOW PENDING BEFORE
 7   THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING
 8   BUT THE TRUTH, SO HELP YOU GOD?
 9          THE WITNESS:  YES.
10          THE CLERK:  PLEASE HAVE A SEAT AND STATE YOUR FULL
11   NAME FOR THE RECORD, SPELLING YOUR NAME FOR THE RECORD.
12          THE WITNESS:  TRAVIS COYLE, T-R-A-V-I-S,
13   C-O-Y-L-E.
14          THE COURT:  ALL RIGHT.  MR. WOLFE.
15          MR. WOLFE:  YOUR HONOR, MAY I APPROACH THE WITNESS
16   WITH TWO DOCUMENTS WHICH I'LL IDENTIFY?
17          THE COURT:  YES.
18                     DIRECT EXAMINATION
19   BY MR. WOLFE:
20   Q.   DETECTIVE COYLE, I'M HANDING YOU EXHIBIT A TO THE
21   DEFENDANT'S MOTION AND THE GOVERNMENT'S OPPOSITION TO THE
22   MOTION, PAGES 15 AND 16.
23          WOULD YOU LOOK AT THOSE TWO DOCUMENTS, PLEASE.
24   A.   OKAY.
25   Q.   TAKING FIRST EXHIBIT A TO THE DEFENDANT'S MOTION, DO
```

DECEMBER 15, 2010

```
 1   YOU RECOGNIZE THAT DOCUMENT?

 2   A.   YES.

 3   Q.   WHAT IS IT?

 4   A.   IT IS A SEARCH WARRANT THAT I AUTHORED.

 5   Q.   THAT'S THE AFFIDAVIT THAT YOU SUBMITTED FOR THE SEARCH

 6   WARRANT FOR UNIT D?

 7   A.   YES.

 8   Q.   WOULD YOU LOOK NOW, PLEASE, AT THE GOVERNMENT'S

 9   OPPOSITION AND PARTICULARLY, THE MOTION, PAGES 15 AND 16.

10   A.   OKAY.

11   Q.   DO YOU RECOGNIZE THOSE TWO PAGES?

12   A.   YES.

13   Q.   NOW, WHAT ARE THEY?

14   A.   IT'S A DECLARATION THAT I REVIEWED AND SIGNED.

15          MR. WOLFE:  YOUR HONOR, I HAVE NOTHING FURTHER

16   FOR --

17          THE COURT:  WHY DON'T YOU SEE IF HE ADOPTS IT FOR

18   PURPOSES OF HIS DIRECT EXAMINATION.

19   BY MR. WOLFE:

20   Q.   IS THERE ANYTHING THAT YOU'VE COME TO LEARN IS NOT TRUE

21   ABOUT EITHER OF THOSE DOCUMENTS?

22   A.   NOT THAT I'M AWARE OF.

23   Q.   I'LL TAKE THE FIRST ONE.  IS EXHIBIT "A" A FAIR AND

24   ACCURATE STATEMENT OF YOUR KNOWLEDGE AT THE TIME YOU SOUGHT

25   THE SEARCH WARRANT FOR UNIT D?
```

DECEMBER 15, 2010

```
 1    A.    YES.

 2    Q.    AND THE DECLARATION ATTACHED TO THE GOVERNMENT'S

 3    OPPOSITION, PAGES 15 AND 16, IS THAT A FAIR AND ACCURATE

 4    STATEMENT OF YOUR KNOWLEDGE AND BELIEF ON THE SUBJECT

 5    COVERED WITHIN IT?

 6    A.    YES.

 7              MR. WOLFE:  NOTHING FURTHER, YOUR HONOR.

 8              THE COURT:  ALL RIGHT.

 9              I'M SORRY.  WHO'S GOING TO EXAMINE?

10              MR. WALSH:  I AM, YOUR HONOR.

11              THE COURT:  MR. WALSH, YES.

12                       CROSS-EXAMINATION

13    BY MR. WALSH:

14    Q.    NOW, AT THE TIME OF THE INITIAL ENTRY BY OFFICER GODOY,

15    DID YOU ALSO FOLLOW OFFICER GODOY INTO UNIT D WITHIN A FEW

16    MINUTES AFTER HE ENTERED?

17    A.    IT WAS SOME TIME AFTER.  IT WASN'T IMMEDIATE, AS I WAS

18    SPEAKING WITH MR. IGARIAN.

19    Q.    WAS IT WITHIN THREE TO FIVE MINUTES LATER THAT YOU

20    ENTERED?

21    A.    IT WAS -- THAT'S A FAIR ESTIMATE.

22    Q.    OKAY.  SO THAT'S PRETTY CONTEMPORANEOUS WITH

23    OFFICER GODOY'S INITIAL ENTRY.  IS THAT RIGHT?

24    A.    I'M NOT SURE WHAT YOU MEAN BY THAT.

25    Q.    IT WAS ALMOST AT THE SAME TIME.
```

1    A.    NO.  IT'S NOT ALMOST.  IT'S A FEW MINUTES AFTER.

2    Q.    OKAY.  AND THEN WHEN YOU ENTERED UNIT D ON THAT FIRST

3    OCCASION, DID YOU SEE SEVERAL GROWING MARIJUANA PLANTS THAT

4    ARE REFERRED TO IN THE SEARCH WARRANT AFFIDAVIT?

5    A.    YES.

6    Q.    OKAY.  AND YOU FELT THAT OBSERVING THE SEVERAL GROWING

7    MARIJUANA PLANTS IN UNIT D, UPON THAT FIRST ENTRY INTO

8    UNIT D, ADDED TO YOUR PROBABLE CAUSE TO SEARCH THE UNIT FOR

9    MARIJUANA, DIDN'T IT?

10   A.    NO, I DON'T THINK IT ADDED.  I THINK IT SUPPORTED IT.

11   Q.    WELL, IT WAS ADDITIONAL INFORMATION, WASN'T IT?

12   A.    IT WAS ADDITIONAL INFORMATION, YES, THAT SUPPORTED MY

13   INITIAL INVESTIGATION.

14   Q.    AND YOU PLACED THAT OBSERVATION IN THE SEARCH WARRANT

15   AFFIDAVIT IN ORDER TO FURTHER SUPPORT YOUR APPLICATION FOR A

16   PROBABLE CAUSE SEARCH WARRANT IN THIS CASE OF UNIT D, DIDN'T

17   YOU?

18            MR. WOLFE:  YOUR HONOR, I OBJECT TO THAT QUESTION

19   AS CALLING FOR A LEGAL CONCLUSION.

20            THE COURT:  OVERRULED.

21            THE WITNESS:  MY INITIAL OBSERVATIONS ARE IN THE

22   AFFIDAVIT.  THAT ADDITIONAL OBSERVATION WAS ALSO PLACED IN

23   THERE BECAUSE THOSE OBSERVATIONS WERE MADE PRIOR TO

24   PREPARING THE SEARCH WARRANT.

25   ///

```
1    BY MR. WALSH:

2    Q.   NOW, GOING BACK TO THE TIME WHEN YOU FIRST ENTERED THE

3    UNIT ON THAT FIRST OCCASION, IF YOU HAD ENTERED UNIT D AND

4    HAD SEEN NO MARIJUANA PLANTS GROWING AND NO MARIJUANA IN

5    UNIT D, WOULD YOU STILL HAVE APPLIED FOR A SEARCH WARRANT TO

6    SEARCH UNIT D?

7    A.   YES.

8    Q.   EVEN IF UNIT D WAS COMPLETELY VACANT AND YOU COULDN'T

9    SEE ANY?

10   A.   WELL, THAT WOULD BE DIFFERENT.   IT WOULD BE -- I WOULD

11   NOT.

12        HOWEVER, THERE WAS SEVERAL STRUCTURES CONTAINED

13   WITHIN UNIT D THAT WOULD STILL LEAD ME TO BELIEVE THAT --

14   LOOKING IN THE DOOR AND NOT SEEING ANYTHING, I WOULD STILL

15   BELIEVE THAT THERE WAS MARIJUANA BEING GROWN INSIDE ONE OF

16   THE ENCLOSED DOORS.

17   Q.   OKAY.   BUT STANDING OUTSIDE UNIT D BEFORE YOU ENTERED

18   THE UNIT, YOU DIDN'T KNOW THAT THERE WAS SEPARATE ROOMS

19   INSIDE UNIT D?

20   A.   NO.

21   Q.   AND FOR ALL INTENTS AND PURPOSES, JUST LOOKING AT THE

22   OUTSIDE OF UNIT D, IT COULD HAVE BEEN JUST A ONE-ROOM

23   WAREHOUSE.   IS THAT RIGHT?

24   A.   YES.

25   Q.   SO THE FACT THAT YOU BECAME AWARE THAT THERE WAS THE
```

DECEMBER 15, 2010

```
 1   THREE SEPARATE GROW ROOMS WAS SOMETHING THAT YOU LEARNED

 2   AFTER YOU ENTERED THE UNIT?

 3   A.   YES.

 4   Q.   SO THEN RESTATING MY QUESTION EARLIER, THEN, IF YOU HAD

 5   ENTERED UNIT D AND YOU SAW NO PLANTS AT ALL, YOU WOULD HAVE

 6   NO REASON AT ALL TO APPLY FOR A SEARCH WARRANT, WOULD YOU?

 7            MR. WOLFE:  OBJECTION, YOUR HONOR.  THE QUESTION

 8   IS SPECULATIVE AND IRRELEVANT.  THE QUESTION IS WHAT WOULD

 9   HAVE HAPPENED IF THERE HAD BEEN NO ENTRY, NOT IF THE FACTS

10   HAD BEEN DIFFERENT.

11            THE COURT:  SUSTAINED.

12            MR. WALSH:  WELL, YOUR HONOR, I THINK IT GOES TO

13   THE ISSUE OF HIS DECISION, WHAT PROMPTED HIS DECISION TO GET

14   A SEARCH WARRANT.  I'M TRYING TO LAY THE GROUNDWORK THAT, IF

15   HE HAD SEEN NOTHING IN THE WAREHOUSE, THEN HE WOULDN'T

16   HAVE --

17            THE COURT:  I KNOW EXACTLY WHAT YOU'RE SAYING.

18   THE OBJECTION IS STILL SUSTAINED, SIR.

19   BY MR. WALSH:

20   Q.   SO ACTUALLY SEEING THE MARIJUANA THAT WAS IN THE UNIT

21   UPON FIRST ENTERING THE UNIT BEHIND OFFICER GODOY, THAT WAS

22   SOMETHING THAT MOTIVATED YOU TO GET THE SEARCH WARRANT,

23   WASN'T IT?

24   A.   NO.

25   Q.   NOT AT ALL?  YOU DIDN'T TAKE IT INTO CONSIDERATION AT
```

DECEMBER 15, 2010

```
 1   ALL?

 2   A.   WELL, AGAIN, IT WAS THERE.  IT ONLY SUPPORTED MY

 3   OPINION THAT THERE WAS MARIJUANA BEING GROWN IN THERE.  THE

 4   FACTORS THAT LED TO THAT POINT IN THE INVESTIGATION IS WHAT

 5   I BELIEVED, THAT MARIJUANA WAS BEING GROWN IN THERE AND THAT

 6   I WOULD HAVE OBTAINED A SEARCH WARRANT FOR.

 7   Q.   BUT OBSERVING THE MARIJUANA IN THERE WAS SIGNIFICANT

 8   ENOUGH FOR YOU TO PUT IT IN THE SEARCH WARRANT AFFIDAVIT.

 9   ISN'T THAT RIGHT?

10   A.   AGAIN, AT THE TIME THAT I AUTHORED THE SEARCH WARRANT

11   AFFIDAVIT, THOSE ITEMS HAD ALREADY BEEN SEEN.

12          HAD THOSE ITEMS NOT HAVE BEEN SEEN, I STILL WOULD

13   HAVE AUTHORED A SEARCH WARRANT UP TO THE POINT PRIOR TO

14   ENTRY BASED ON THE INFORMATION THAT I HAD AND THE

15   OBSERVATIONS THAT I HAD UP TO THAT POINT.

16   Q.   OKAY.  NOW, YOU STATE IN YOUR SEARCH WARRANT AFFIDAVIT

17   THAT YOU FORMED THE OPINION THAT YOU BELIEVED MARIJUANA WAS

18   BEING CULTIVATED IN UNIT D AT A POINT IN TIME AFTER YOU HAD

19   MADE THE OBSERVATIONS OF THE BAMBOO SHOOTS AND THE GENERATOR

20   BEING TAKEN INTO THE UNIT.

21          IS THAT RIGHT?

22   A.   IT WAS ACTUALLY PROPANE.

23   Q.   EXCUSE ME.  THE PROPANE TANK.

24   A.   YES, IT WAS A FIVE-GALLON PROPANE TANK, THE BAMBOO

25   STALKS, THE PAINTED WINDOW, AND THE ODOR FROM MR. IGARIAN BY
```

```
 1    MYSELF, MR. GAMBARYAN BY DETECTIVE MCKINNEY, AND THE ODOR AT

 2    THE DOOR BY DETECTIVE LEVIN AND OFFICER GODOY.

 3    Q.   ALL RIGHT.  BUT THE DETECTING THE ODOR FROM THE DOOR

 4    AND UPON MR. IGARIAN OCCURRED AFTER THE POLICE OFFICERS

 5    ARRIVED TO ASSIST YOU.

 6              IS THAT RIGHT?

 7    A.   THAT'S CORRECT.

 8    Q.   AND IN YOUR SEARCH WARRANT AFFIDAVIT YOU SAY YOU FORMED

 9    YOUR OPINION THAT THERE WAS MARIJUANA INSIDE UNIT D BEFORE

10    YOU CALLED THE MEMBERS OF THE TEAM IN ORDER TO ASSIST YOU.

11              IS THAT RIGHT?

12              MR. WOLFE:  YOUR HONOR, OBJECTION.  THE QUESTION

13    MISSTATES THE AFFIDAVIT.

14              THE COURT:  SUSTAINED.

15              WHY DON'T YOU REFER TO THE AFFIDAVIT AND ASK YOUR

16    QUESTION IN THAT WAY, IF THAT'S WHAT YOU WANT.

17              MR. WALSH:  ALL RIGHT.

18    BY MR. WALSH:

19    Q.   YOU HAVE THE AFFIDAVIT IN FRONT OF YOU.  I THINK

20    IT'S -- I'M REFERRING TO PAGE 8 OF 11 OF THE AFFIDAVIT, THE

21    FIRST THREE LINES.

22    A.   YES.

23    Q.   ALL RIGHT.  SO MY QUESTION IS THAT YOU -- YOU FORMED

24    YOUR OPINION THAT UNIT D CONTAINED MARIJUANA BEFORE YOU

25    CALLED FOR ASSISTANCE BY OTHER OFFICERS TO ARRIVE AT THE
```

```
 1   SCENE.  IS THAT RIGHT?
 2   A.   YES.  I HAD AN OPINION THAT MARIJUANA WAS BEING GROWN
 3   IN THERE BASED ON THE INFORMATION THAT I HAD RECEIVED FROM
 4   THE ANONYMOUS SOURCE OF INFORMATION AND THE OBSERVATIONS
 5   THAT I MADE FROM THE ITEMS BEING REMOVED FROM THE CAR INTO
 6   THE BUILDING.
 7        BASED ON THAT INFORMATION AND THOSE OBSERVATIONS,
 8   I CONTACTED ADDITIONAL MEMBERS OF MY SQUAD TO RESPOND TO
 9   ASSIST WITH ADDITIONAL INVESTIGATION OF THE LOCATION.
10   Q.   OKAY.  NOW, MY QUESTION TO YOU, THEN, IS AT THAT POINT
11   IN TIME, SINCE YOU HAD FORMED THE OPINION THAT THERE WAS
12   MARIJUANA IN UNIT D, AT THE TIME THAT YOU WERE CALLING FOR
13   ADDITIONAL OFFICERS TO ASSIST YOU, WHY DIDN'T YOU APPLY FOR
14   A SEARCH WARRANT AT THAT POINT IN TIME?
15        MR. WOLFE:  OBJECTION, YOUR HONOR.  THE QUESTION
16   IS NOT RELEVANT TO THE ANALYSIS.
17        THE COURT:  OVERRULED.
18        THE WITNESS:  I WANTED TO DO SOME ADDITIONAL
19   SURVEILLANCE OF THE LOCATION FOR ADDITIONAL ITEMS TO
20   CORROBORATE THE INFORMATION PROVIDED ME BY THE SOURCE OF
21   INFORMATION AND ALSO TO SUPPORT THE ITEMS THAT I OBSERVED
22   ENTER THE LOCATION WERE, IN FACT, FOR GROWING MARIJUANA.
23   BY MR. WALSH:
24   Q.   BUT THOSE OBSERVATIONS -- THAT CONTINUING INVESTIGATION
25   COULD HAVE BEEN DONE WHILE OTHER OFFICERS WERE SEEKING A
```

1    SEARCH WARRANT, THOUGH.  COULDN'T THAT HAVE BEEN DONE?

2    A.    I'M SORRY?  I DON'T UNDERSTAND THE QUESTION.

3    Q.    IN OTHER WORDS, AT THE TIME THAT YOU CALLED THE

4    FOOTHILL NARCOTICS ENFORCEMENT DETAIL FOR ADDITIONAL

5    OFFICERS TO COME OUT TO THE SCENE, YOU COULD HAVE ALSO

6    APPLIED FOR A SEARCH WARRANT AND HAVE OTHER OFFICERS REMAIN

7    AND CONTINUE THE INVESTIGATION WHILE THE SEARCH WARRANT

8    APPLICATION WAS PENDING, AT THAT POINT IN TIME.

9    A.    WELL, AT THAT POINT IN TIME, I WAS THE INVESTIGATING

10   OFFICER.  SO I WOULD HAVE BEEN THE ONE THAT WOULD HAVE

11   AUTHORED THE SEARCH WARRANT, AND THOSE PERSONS WOULD HAVE TO

12   COME TO TAKE OVER THE SURVEILLANCE.

13          HOWEVER, I DID WANT AN ODOR OF MARIJUANA COMING

14   FROM THE LOCATION IN ORDER TO -- OR IN ORDER TO GO BACK AND

15   WRITE THE SEARCH WARRANT SO THAT WAY I HAD ONE MORE THING TO

16   SUPPORT MY OPINION AS OPPOSED TO JUST INFORMATION AND SEEING

17   TWO THINGS GO INTO A LOCATION.

18          MR. WALSH:  MAY I HAVE A MOMENT, YOUR HONOR?

19          THE COURT:  OF COURSE.

20      (DEFENSE COUNSEL CONFERS WITH DEFENDANT SOTTO VOCE.)

21          MR. WALSH:  I HAVE TWO BRIEF AREAS THAT I WOULD

22   LIKE TO COVER.

23          THE COURT:  OKAY.

24   BY MR. WALSH:

25   Q.    PRIOR TO THE DATE WHEN YOU WERE OUT THERE DOING YOUR

 1 | SURVEILLANCE, HAD YOU BEEN OUT TO THAT LOCATION BEFORE?

 2 | A.   I BELIEVE I RECEIVED THAT INFORMATION THAT MORNING

 3 | AND RESPONDED THERE SHORTLY AFTER.

 4 | Q.   WHAT ABOUT WITHIN THE TWO WEEKS LEADING UP TO THE DATE

 5 | THAT YOU RESPONDED TO THE LOCATION, HAD YOU BEEN OUT TO THE

 6 | VICINITY OF UNIT D CONDUCTING AN INVESTIGATION?

 7 | A.   I BELIEVE THAT WAS THE FIRST TIME THAT I HAD BEEN OUT

 8 | THERE.

 9 | Q.   THEN REFERRING TO YOUR DECLARATION, DO YOU HAVE THAT IN

10 | FRONT OF YOU?

11 | A.   I DO.

12 | Q.   STARTING AT LINE 14.

13 | A.   PAGE 1?

14 | Q.   PAGE 16, I THINK, PARAGRAPH 5.

15 | A.   LINE 14?

16 | Q.   YEAH.

17 | A.   OKAY.

18 | Q.   CAN I READ TO YOU AND THEN ASK YOU A QUESTION.  IT

19 | STATES (AS READ:)

20 | *"I WOULD HAVE SOUGHT A SEARCH WARRANT FOR UNIT D IN*

21 | *VIEW OF THE PROBABLE CAUSE TO BELIEVE THAT EVIDENCE OF*

22 | *AN INDOOR MARIJUANA GROW WAS IN THE UNIT, PARTICULARLY*

23 | *SINCE THE BLACK BAG OF MARIJUANA PLANTS HAD JUST BEEN*

24 | *TAKEN OUT OF UNIT D."*

25 |     NOW, MY QUESTION IS AT THE TIME THAT YOU ENTERED,

DECEMBER 15, 2010

```
 1   THAT FIRST ENTRY OF UNIT D, YOU HADN'T OPENED THE BLACK BAG
 2   YET, HAD YOU?
 3   A.   THAT'S CORRECT.
 4   Q.   SO YOU HAD MERELY SEEN THE BLACK BAG BEING PUT IN
 5   MR. IGARIAN'S CAR?
 6   A.   THAT'S CORRECT, YES.
 7   Q.   AND THEN YOU QUESTIONED MR. IGARIAN?
 8   A.   YES.
 9   Q.   AND THEN YOU HAD HANDCUFFED MR. IGARIAN?
10   A.   AT SOME POINT, HE WAS HANDCUFFED.  I DON'T BELIEVE I
11   APPROACHED HIM, ASKED HIM A COUPLE OF QUESTIONS, AND
12   HANDCUFFED HIM.
13   Q.   AND THEN AFTER THE CONVERSATION WITH MR. IGARIAN, THE
14   NEXT THING THAT OCCURRED IS YOU ENTERED UNIT D --
15   A.   YES.
16   Q.   -- AND SAW THE MARIJUANA PLANTS?
17   A.   YES.
18   Q.   AND THEN YOU CAME OUT AND THEN, AT SOME POINT IN TIME,
19   YOU SEARCHED MR. IGARIAN'S CAR AND OPENED UP THE BLACK BAG?
20   A.   YES.
21   Q.   AND HOW MUCH LATER WAS THAT AFTER YOU HAD COME OUT OF
22   UNIT D?
23   A.   I'M SURE IT WAS RIGHT AFTER OR JUST BEFORE.  I'M NOT
24   TOO SURE, BUT I KNOW IT WAS AROUND THE SAME TIMEFRAME.
25   Q.   SO BASICALLY, TO A CERTAIN EXTENT, OBSERVING MARIJUANA
```

1    PLANTS GROWING INSIDE UNIT D AT LEAST PROMPTED YOUR GOING

2    BACK TO MR. IGARIAN'S CAR AND OPENING UP THE BLACK BAG

3    SUSPECTING THAT THAT HAD MARIJUANA IN IT?

4              MR. WOLFE:  YOUR HONOR, THAT QUESTION MISSTATES

5    THE TESTIMONY JUST GIVEN ABOUT WHEN IT TOOK PLACE.

6              THE COURT:  I THINK YOU BETTER CLARIFY THAT.

7    BY MR. WALSH:

8    Q.   OKAY.  YOUR SEARCH OF THE BLACK BAG OCCURRED AFTER YOU

9    SAW MARIJUANA INSIDE UNIT D FOR THE FIRST TIME.  RIGHT?

10   A.   I'M SORRY?

11   Q.   YOUR SEARCH OF THE BLACK BAG, WHEN DID THAT HAPPEN IN

12   CONNECTION WITH THE TIME THAT YOU ENTERED UNIT D FOR THE

13   FIRST TIME?

14   A.   I DON'T RECALL EXACTLY.  I WOULD ASSUME THAT IT WAS

15   AFTER I ENTERED D, BUT AGAIN, I'M NOT SURE WHEN EXACTLY THAT

16   BLACK BAG WAS OPENED.  I KNOW IT WAS DONE THE SAME TIME,

17   THOUGH.

18   Q.   BUT YOU DIDN'T SEE THE CONTENTS OF THE BLACK BAG AT THE

19   TIME THAT YOU WERE QUESTIONING MR. IGARIAN, DID YOU?

20   A.   NO, I DID NOT.

21   Q.   AND YOU DIDN'T SEE THE CONTENTS OF THE BLACK BAG PRIOR

22   TO YOU WALKING INTO UNIT D FOR THE FIRST TIME, DID YOU?

23   A.   I DON'T BELIEVE SO.

24              AGAIN, I'M NOT SURE ON THE WHOLE TIMELINE OR THE

25   TIME OF EVENTS.  BUT IT WOULD BE SAFE TO SAY THAT NO, I

DECEMBER 15, 2010

```
 1    DIDN'T SEE THE CONTENTS PRIOR TO ENTERING.  HOWEVER, I'M NOT

 2    SURE IF I OPENED THAT BLACK BAG BEFORE I WENT IN.  I JUST

 3    DON'T RECALL.

 4    Q.   WELL, ACCORDING TO THE CHRONOLOGY OF THE FACTS THAT YOU

 5    SET OUT IN THE SEARCH WARRANT AFFIDAVIT, YOU DON'T REPORT

 6    OPENING UP THE CONTENTS OF THE BLACK BAG PRIOR TO ENTERING

 7    UNIT D, DO YOU?

 8    A.   I DON'T BELIEVE SO.

 9              MR. WALSH:  NOTHING FURTHER, YOUR HONOR.

10              THE COURT:  ANY OTHER COUNSEL CARE TO EXAMINE?

11              MR. REED?  ANYBODY ON THE DEFENSE SIDE.  DOESN'T

12    MATTER.

13              MR. REED:  NO, YOUR HONOR.

14              MR. BROOKLIER:  NO, YOUR HONOR.  THANK YOU.

15              THE COURT:  MR. WOLFE, ANY REDIRECT?

16              MR. WOLFE:  NO, YOUR HONOR.

17              THE COURT:  ALL RIGHT.

18              DETECTIVE COYLE, THANK YOU VERY MUCH.  YOU MAY

19    STEP DOWN.

20              MR. WOLFE:  YOUR HONOR, MAY I ASK IF

21    DETECTIVE COYLE MAY BE EXCUSED NOW?

22              THE COURT:  OKAY.  ANY PROBLEM WITH HIS BEING

23    EXCUSED?

24              MR. REED:  NO OBJECTION.

25              MR. BROOKLIER:  NO OBJECTION.
```

DECEMBER 15, 2010

```
 1              THE COURT:  ALL RIGHT.

 2              YES, YOU MAY BE EXCUSED.

 3              OKAY.  WE HAVE NOW CONDUCTED OUR EVIDENTIARY

 4   HEARING ON THIS ISSUE.  IF THERE'S ANY ARGUMENT, BRIEF

 5   ARGUMENT, THAT YOU WISH TO MAKE ON THIS ISSUE, MR. WALSH,

 6   I'LL BE HAPPY TO ENTERTAIN IT.
```

**ARGUMENT ON BEHALF OF DEFENSE**

```
 8              MR. WALSH:  RIGHT.  YES, YOUR HONOR.

 9              I GUESS BEFORE WE GET INTO THE MAIN ISSUE OF THE

10   HEARING, SOMETHING DID COME UP IN THE HEARING, AND THAT IS

11   THAT THE OBSERVATIONS OF THE CONTENTS OF THE BLACK BAG

12   OCCURRED AFTER THE INITIAL ILLEGAL ENTRY.

13              SO OUR POSITION WOULD BE THE COURT COULDN'T TAKE

14   THAT INTO CONSIDERATION IN EVALUATING PROBABLE CAUSE BECAUSE

15   IT'S NOT PRE-EXISTING PROBABLE CAUSE, BUT THAT'S A SIDE

16   ISSUE.

17              THE COURT:  I THINK EVEN BEFORE HE TOOK THE STAND,

18   I BELIEVE DURING MY CONVERSATION WITH MR. REED, THAT I HAD

19   ALREADY INDICATED THAT IT WAS MY INTENTION TO NOT CONSIDER

20   THAT AS PART OF THE PROBABLE CAUSE BECAUSE MY SENSE OF IT

21   WAS THAT HE DIDN'T HAVE THAT BEFORE, BEFORE HE WENT IN TO

22   THE UNIT.  AND I THINK IT'S FAIRLY SAID, IT'S BEEN

23   CONFIRMED.

24              SO NO, I DO NOT TAKE THE CONTENT OF THE BLACK BAG

25   INTO CONSIDERATION IN THE OVERALL DETERMINATION OF WHETHER
```

DECEMBER 15, 2010

1    OR NOT THERE'S PROBABLE CAUSE.

2         IF YOU WANT TO BE HEARD ON WHETHER OR NOT -- WELL,

3    ON THIS FACTUAL ISSUE THAT WE JUST HAD A HEARING ON, I'LL

4    HEAR FROM YOU.

5         MR. WALSH:  YES.  I WANT TO MOVE ON TO THAT ISSUE,

6    AND THAT ARISES OUT OF PAGE 33 OF OUR MOVING PAPERS THAT I

7    POINTED TO THE COURT'S ATTENTION EARLY THIS MORNING WHERE

8    OUR CONTENTION WAS THAT, IF THE DECISION TO SEEK A WARRANT

9    WAS PROMPTED BY WHAT THE OFFICER SAW DURING THE ILLEGAL

10   SEARCH, THEN THE INDEPENDENT SOURCE DOCTRINE DOES NOT APPLY.

11        AND THAT'S TAKEN FROM LANGUAGE IN MURRAY VERSUS

12   UNITED STATES.  AND ON PAGE 542 OF THE MURRAY DECISION, THE

13   COURT STATES THAT (AS READ:)

14        "THE ULTIMATE QUESTION THEREFORE IS WHETHER THE SEARCH

15         PURSUANT TO THE WARRANT WAS, IN FACT, A GENUINELY

16         INDEPENDENT SOURCE OF THE INFORMATION AND TANGIBLE

17         EVIDENCE AT ISSUE HERE."

18        THIS WOULD NOT HAVE BEEN THE CASE IF THE AGENT'S

19   DECISION TO SEEK THE WARRANT WAS PROMPTED BY WHAT HE HAD

20   SEEN DURING THE INITIAL ENTRY.

21        SO WHEN I ASKED THE OFFICER WHETHER HE WOULD HAVE

22   CONDUCTED A SEARCH IF THE WAREHOUSE WAS EMPTY, HE WAS

23   EVASIVE.  HE SAID, WELL, THERE WERE MULTIPLE ROOMS, AND HE

24   DIDN'T SEE ALL THE ROOMS.

25        BUT THE FACT OF THE MATTER IS HE DIDN'T SEE ANY

DECEMBER 15, 2010

1    ROOMS UNTIL HE ENTERED THE RESIDENCE OR UNTIL HE ENTERED

2    UNIT D; AND THEREFORE, HIS OBSERVATIONS OF SEEING MARIJUANA

3    PLANTS GROWING THERE WAS PLACED IN THE SEARCH WARRANT

4    AFFIDAVIT.

5            IT'S CLEARLY THE MOST SIGNIFICANT PART OF THE

6    SEARCH WARRANT AFFIDAVIT BECAUSE, UP UNTIL THAT POINT IN

7    TIME, THE OFFICERS WERE BASING THEIR PROBABLE CAUSE ON

8    REASONABLE SUSPICION.  BUT ONCE THEY HAD ENTERED THE UNIT

9    AND SEEN MARIJUANA GROWING, PLACING THAT IN THE SEARCH

10   WARRANT AFFIDAVIT MADE IT A HUNDRED PERCENT CERTAIN THAT

11   THIS SEARCH WARRANT WOULD BE ISSUED BECAUSE IT WAS A HUNDRED

12   PERCENT CERTAINTY THAT THERE WAS MARIJUANA GROWING IN THE

13   STORAGE UNIT.

14           SO I THINK ANY REASONABLE ANSWER TO THAT

15   QUESTION -- THAT IS, IF HE HAD GONE INTO THE UNIT AND IT WAS

16   AN EMPTY WAREHOUSE AND THERE WAS NO MARIJUANA THERE, HE

17   WOULD NOT HAVE APPLIED FOR A SEARCH WARRANT -- NO REASONABLE

18   PERSON WOULD HAVE BECAUSE IT WOULD HAVE BEEN A WASTE OF TIME

19   IN ORDER TO APPLY FOR A SEARCH WARRANT FOR AN EMPTY

20   WAREHOUSE.

21           AND SO, IN THIS CASE, BEFORE ENTERING, THEY HAD

22   REASONABLE SUSPICION, THEY HAD SMELLED THE ODOR OF

23   MARIJUANA, THEY HAD SEEN ITEMS CONSISTENT WITH GROWING

24   MARIJUANA BEING BROUGHT IN.

25           THEIR CURIOSITY WAS UP, BUT THEY HADN'T REACHED

DECEMBER 15, 2010

```
 1    THE POINT WHERE THEY ACTUALLY APPLIED FOR A SEARCH WARRANT.

 2    AND THEN THEY ENTERED THE UNIT, THEY SAW THE MARIJUANA

 3    GROWING, AND THEN THEY CAME OUT, AND THEN THEY APPLIED FOR

 4    THE WARRANT.

 5         SO I THINK ON THIS RECORD, IT'S REASONABLE FOR THE

 6    COURT TO MAKE THE FINDING THAT THE WARRANT WAS PROMPTED BY

 7    WHAT THE OFFICER SAW DURING THE ILLEGAL SEARCH.

 8         THE COURT:  BY THAT LOGIC, WOULD THERE EVER, EVER

 9    BE A CASE WHERE AN OFFICER CAN ESTABLISH THAT HE OR SHE

10    WOULD HAVE APPLIED FOR A WARRANT EVEN PREVIOUS TO ANY KIND

11    OF AN ENTRY THAT MAY BE LATER DEEMED UNLAWFUL?

12         MR. WALSH:  WELL, IN SEGURA THEY SAY IT'S VERY

13    HARD FOR AN OFFICER TO OVERCOME THAT PROBLEM.  I MEAN,

14    THEY'VE HIGHLIGHTED THAT AS A PROBLEM IN THE --

15         THE COURT:  WELL, IT MAY BE A PROBLEM --

16         MR. WALSH:  -- IN THE MURRAY CASE.

17         THE COURT:  IT MAY BE A PROBLEM, BUT IT'S A MATTER

18    OF FACT.  IT'S A FACTUAL DETERMINATION.  BUT BY YOUR

19    ARGUMENT, THEN WE DON'T EVEN NEED A FACTUAL DETERMINATION;

20    IT WOULD BE AN IRREBUTTABLE PRESUMPTION AND CONCLUSION.

21         SO I DON'T THINK THAT'S RIGHT.  BECAUSE EVERY

22    TIME, NECESSARILY, THOSE WOULD BE THE FACTS AND IF THAT'S

23    THE CASE AND THAT'S GOING TO MAKE IT IMPOSSIBLE FOR THE

24    DETECTIVE OR THE OFFICER TO ESTABLISH, AS A MATTER OF FACT,

25    HE WOULD HAVE APPLIED FOR IT REGARDLESS, THEN WHY WOULD THE
```

DECEMBER 15, 2010

```
 1    SUPREME COURT EVEN HAVE WASTED EVERYBODY'S TIME BY SAYING

 2    THAT'S A POSSIBILITY?

 3              MR. WALSH:  WELL, JUST FROM A FACTUAL MATTER,

 4    YOUR HONOR, WE'RE URGING THE COURT TO MAKE A FINDING THAT

 5    HIS DECISION TO SEEK THE SEARCH WARRANT WAS PROMPTED BY WHAT

 6    HE SAW.  AND IF THE COURT MAKES THAT FINDING, THEN THE

 7    INDEPENDENT SEARCH DOCTRINE DOESN'T APPLY AND THE COURT

 8    SHOULD SUPPRESS THE EVIDENCE.

 9              THE COURT:  ALL RIGHT.  I UNDERSTAND.  THANK YOU.

10                   ARGUMENT ON BEHALF OF PLAINTIFF

11              THE COURT:  MR. WOLFE.

12              DO YOU WANT TO COMMENT ALSO ON WHAT HE SAID ABOUT,

13    YOU KNOW, IF HE HAD FOUND THE PLACE EMPTY, HE WOULDN'T HAVE

14    SEARCHED?

15              DO YOU THINK THAT HAS ANY LOGICAL CONNECTION TO

16    THE INQUIRY THAT WE ARE SUPPOSED TO MAKE?

17              MR. WOLFE:  NO, YOUR HONOR, I DON'T.

18              I UNDERSTAND THE INQUIRY TO BE IF THE FACTS WERE

19    AS THEY WERE KNOWN TO BE AT THE MOMENT IMMEDIATELY PRIOR TO

20    THE ENTRY, WITHOUT REGARD TO THE EVENTS OF THE ENTRY, WOULD

21    A WARRANT HAVE BEEN SOUGHT, NOT IF THERE HAD BEEN AN ENTRY

22    AND A COUNTER-FACTUAL STATE OF AFFAIRS WAS FOUND.

23              IT MAKES NO SENSE TO SAY "IF I'D GONE IN AND SEEN

24    NOTHING," BUT THAT'S NOT WHAT HAPPENED.

25              THE QUESTION IS IF HE HAD GONE UP AND THE DOOR HAD
```

DECEMBER 15, 2010

```
 1    BEEN LOCKED, NO ONE ANSWERED, IT COULD NOT BE FORCED, NO
 2    ENTRY TOOK PLACE, WHAT WOULD HAPPEN.  I BELIEVE THAT'S THE
 3    ANALYSIS.
 4           AND I BELIEVE THAT THE MOST INTERESTING TESTIMONY
 5    ABOUT THAT IS THAT THE DETECTIVE SAID IN RESPONSE TO THE
 6    QUESTION "YOU FORMED AN OPINION BEFORE YOU TALKED TO IGARIAN
 7    THAT MARIJUANA WAS BEING GROWN IN THERE.  WHY DIDN'T YOU
 8    APPLY FOR THE WARRANT THEN?"
 9           AND HE SAID, "I WANTED TO DO MORE INVESTIGATION TO
10    CORROBORATE THE INFORMATION FROM THE TIPSTER.  I DID WANT AN
11    ODOR OF MARIJUANA FROM THE LOCATION TO SUPPORT MY
12    OBSERVATIONS."
13           HE WANTED TO DO A LITTLE MORE INVESTIGATION.  HE
14    WALKED UP.  HE MADE THE INVESTIGATION.  YOUR HONOR'S
15    DESCRIBED ALREADY WHAT HE FOUND.
16           MR. IGARIAN, INCREDIBLY DENYING THAT HE KNEW WHAT
17    WAS IN THE BAG.  THAT FACT WAS CERTAINLY KNOWN.  HE DID NOT
18    YET KNOW WHAT WAS IN THE BAG, BUT HE KNEW THAT IGARIAN
19    INCREDIBLY DENIED KNOWLEDGE OF WHAT WAS IN THE BAG AND HE
20    INCREDIBLY DENIED KNOWLEDGE OF WHAT WAS IN THE BUILDING.  I
21    BELIEVE THERE'S PROBABLE CAUSE THERE.
22           UNLESS YOUR HONOR HAS ANOTHER QUESTION, I'LL
23    SUBMIT.
24           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.
25           ALL RIGHT.  COUNSEL, THANK YOU VERY MUCH FOR YOUR
```

```
 1    ARGUMENT AND FOR THE HEARING.  I APPRECIATE IT.

 2              I WILL TAKE THIS MATTER UNDER SUBMISSION, AND I

 3    WILL ISSUE A WRITTEN RULING IN DUE COURSE.  ALL RIGHT.

 4              HAVE A PLEASANT AFTERNOON.  THANK YOU.

 5              MR. REED:  YOUR HONOR, PROCEDURALLY, WHERE IS THE

 6    CASE?  DO YOU WANT TO SET IT FOR STATUS?

 7              THE COURT:  NO.  I WILL ISSUE MY RULING, AND IN

 8    THAT RULING, I WILL ISSUE AN ORDER FOR FURTHER STATUS

 9    CONFERENCE.  AND THEN WE'LL COME IN AND WE'LL TALK ABOUT,

10    DEPENDING ON WHAT THE RULING IS, WHERE WE GO FORWARD ON

11    THAT.

12              MR. REED:  VERY GOOD.

13              THE COURT:  OKAY.  THANK YOU.

14              MR. STANLEY:  COUNSEL FOR MR. IGARIAN COULD NOT BE

15    PRESENT THIS AFTERNOON.  SHE HAD TO BE IN ANOTHER COURTROOM.

16    SHE TEXTED ME A COUPLE OF DATES WHERE SHE WOULD BE

17    UNAVAILABLE.

18              MY GUT FEELING IS THAT, RIGHT NOW, THOSE DATES ARE

19    IRRELEVANT.

20              THE COURT:  THEY ARE, AND MR. IGARIAN WAS NOT A

21    MOVING PARTY HERE.  SO THE FACT THAT SHE'S NOT HERE THIS

22    AFTERNOON, I THINK THAT'S FINE.

23              BUT I THINK YOU'RE RIGHT THAT THE DATES ARE PRETTY

24    MUCH IRRELEVANT BECAUSE I DO EXPECT TO ISSUE MY RULING

25    SOONER RATHER THAN LATER.  OBVIOUSLY, I DON'T WANT TO
```

DECEMBER 15, 2010

1    UNNECESSARILY DELAY, BUT THIS IS SOMETHING I WOULD LIKE TO

2    THINK ABOUT IN LIGHT OF THE ARGUMENTS, AND I WANT TO SORT OF

3    APPRECIATE THE SIGNIFICANCE OF THE ARGUMENTS, AND THEN I

4    WILL ISSUE MY RULING.

5         BUT WE'LL TALK ABOUT DATES WHEN YOU FOLKS COME

6    BACK ON A CERTAIN DATE, AND I'LL HAVE MY CLERK CALL AROUND

7    TO MAKE SURE THAT THAT DATE IS OKAY.  IF THERE'S A PROBLEM,

8    WE'LL JUST DO WHAT WE CAN TO ACCOMMODATE.

9         MR. STANLEY:  SHE'S JUST NOT AVAILABLE FROM NOW

10   THROUGH JANUARY 7.

11        THE COURT:  OKAY.

12        MR. STANLEY:  THANK YOU.

13        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH,

14   COUNSEL.

15        THE CLERK:  THIS COURT NOW STANDS IN RECESS.

16             (PROCEEDINGS CONCLUDED.)

17                   --OOO--

18

19

20

21

22

23

24

25

DECEMBER 15, 2010

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,
TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND
CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED
PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE
TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE
REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 28TH DAY OF FEBRUARY, 2011.


                    /S/ MARY RIORDAN RICKEY
                    MARY RIORDAN RICKEY
                    OFFICIAL COURT REPORTER

DECEMBER 15, 2010